Fred OLIVER, et al., Plaintiffs-Appellees, Cross-Appellants,

v.

**TRUNKLINE GAS COMPANY, Defendant-Appellant, Cross-Appellee.**

No. 85–2323.

United States Court of Appeals, Fifth Circuit.

May 12, 1986.

John D. White, Betty Taylor Tauber, Houston, Tex., for defendant-appellant, cross-appellee.

Michael Paul Graham, George F. Goolsby, Houston, Tex., for plaintiffs-appellees, cross-appellants.

Before WISDOM, RUBIN, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

## I

In January 1972, the parties entered into a contract under which the defendant Trunkline was to purchase the plaintiff producers' natural gas at the maximum rate allowed by law. Under the applicable federal law, the maximum prices that may be charged for gas that is sent out of state differ depending on whether the gas was dedicated to interstate commerce before or after January 1, 1973. At the time the contract was formed, all parties apparently believed that the gas was to be dedicated to the interstate market immediately.

In fact, no gas from these wells left Texas until March 1973, when buyer completed a connection between its interstate pipeline and the producers' wells. Until that time, the sellers' gas was piped to a nearby intrastate pipeline owned by Coastal States Gas Company. During this period, Coastal informally agreed with buyer to receive the sellers' gas and to redeliver an equal amount of gas to buyer at a remote interconnection between Coastal's intrastate pipeline and the buyer's interstate pipeline; because of the layout of the pipes, none of the sellers' gas could actually have entered the buyer's interstate line. To characterize this gas as "dedicated to the interstate market" for this period, one would therefore have to conclude that the exchange agreement between Coastal and Trunkline created a "constructive" interstate flow of gas. During the period in question, the buyer paid the sellers the maximum rates allowed by federal law for gas that had been dedicated to interstate commerce before January 1, 1973.

Realizing that they might be entitled to the higher rates applicable to gas dedicated to interstate commerce after January 1, 1973, the sellers began negotiating with the buyer. In 1983, after negotiations broke down, the sellers sued on the contract in state court. The buyer removed to federal court, where the sellers sought, but were denied, a remand based on lack of subject-matter jurisdiction. After a bench trial, the district court found that the gas had not been dedicated to interstate commerce until March 1973 and awarded the difference between the maximum rate allowed for such gas and the rate actually collected. The award covered a period beginning four years before suit was filed (the period of limitations for contract actions in Texas). Both parties appeal.

## II

This court can reach the merits of the appeal only if we determine that the district court had subject-matter jurisdiction. *Mansfield C. & L.M.R. Co. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884). Although the sellers argued to the district court that jurisdiction was lack-

ing, both parties now contend that jurisdiction was properly exercised, under 28 U.S.C. §§ 1331 and 1441, because the action was one "arising under" the federal statutes regulating the sale of natural gas. We disagree.

This is a suit on a contract. That contract included a provision according to which the buyer would pay the maximum rate allowed by law. Because maximum rates are fixed by federal law, construction of the contract requires answering a federal-law question that will necessarily dominate the merits portion of this dispute. But the presence of a federal issue, however much it may dominate the case, is insufficient to confer federal-question jurisdiction. On the contrary, such jurisdiction is conferred by statute only when the plaintiff is asserting a right created by federal law. *See, e.g., Superior Oil Co. v. Pioneer Corp.*, 706 F.2d 603, 605–06 (5th Cir.1983), *cert. denied*, 464 U.S. 1041, 104 S.Ct. 706, 79 L.Ed.2d 171 (1984); *Cox v. International Union of Operating Engineers*, 672 F.2d 421 (5th Cir.1982).[1] As we pointed out in *Superior Oil*, the federal statutes imposing "price *ceilings* do not give the gas producer a federal *right* to receive a particular price for its gas." 706 F.2d at 606 (citation omitted) (emphasis in original).

The sellers attempt to distinguish *Superior Oil* by arguing that the federal regulations relevant to that case were mere price ceilings, while the law applicable to this case creates such a web of rights and obligations between producers and purchasers that it amounts to a "utility-type" statute. Neither party, however, has pointed to any provision of federal law that requires the defendant to pay a higher price than it did pay. At oral argument, both parties conceded that they would have been permitted by federal law to agree on a price that was lower than the maximum lawful price. It is *only* because of the contract's provisions that the sellers are able to assert a claim to the maximum lawful price—neither this claim nor the seller's right to receive the agreed upon price arises from federal law. Accordingly, federal-question jurisdiction is lacking. Because no other basis for federal subject-matter jurisdiction has been suggested, we are compelled to dismiss the action.

### III

We are fully aware of the inefficiency and expense to which these sellers are being subjected. They properly chose a state forum. When their suit was removed to federal court, they properly moved for a remand, and they supported their motion with the correct legal arguments. Now, after having won a judgment that would have been worth almost $4 million, they are being told that they must start all over again in the state court that they originally and correctly chose. We cannot avoid this result, for the rules of federal jurisdiction, while sometimes technical and counterintuitive, are strict and mandatory. *Cf. In re Carter*, 618 F.2d 1093, 1100 (5th Cir.1980), *cert. denied*, 450 U.S. 949, 101 S.Ct. 1410, 67 L.Ed.2d 378 (1981). Furthermore the presumption is that every federal court is "without jurisdiction" unless "the contrary appears affirmatively from the record." *King Bridge Co. v. Otoe County*, 120 U.S. 225, 226, 7 S.Ct. 552, 30 L.Ed. 623 (1887). Federal courts are courts of limited jurisdiction by origin and design, implementing a basic principle of our system of limited government. In sum, we do not visit a mere technicality upon the parties. Rather, we uphold a basic tenet of the American system of diffused political and judicial power.

VACATED AND REMANDED with instructions to remand to the state court in accordance with 28 U.S.C. § 1447(c).

---

1. For a discussion of the subtleties and complications inherent in this seemingly simple rule, see C. Wright, A. Miller & E. Cooper, 13B *Federal Practice and Procedure* §§ 3561–3566 (1984 & Supp. 1985); *see also Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).