**CITY OF VALPARAISO, INDIANA, Plaintiff,**

v.

**IRON WORKERS LOCAL UNION # 395, et al., Defendants.**

**Civ. No. H 87–00507.**

United States District Court, N.D. Indiana, Hammond Division.

Sept. 16, 1987.

R. Bradley Koeppen, City Atty., Valparaiso, Ind., Stanley E. Niew, Niew & Kitzka, Brook, Ill., for plaintiff.

Bernard M. Mamet, Paul T. Berkowitz, Chicago, Ill., Michael Bosch, Hammond, Ind., for defendants.

### ORDER

MOODY, District Judge.

This matter is before the court on a motion to remand filed September 10, 1987 by the plaintiff City of Valparaiso, Indiana. On September 14, 1987, the court entered a one-page order remanding this case to state court. At that time the court stated that a more detailed order would follow shortly; this is that order.

### I.

This action was removed to federal court from the Superior Court of Porter County, Indiana by defendants Iron Workers Local Union # 395, Laborers International Union of North America (Locals # 41 and # 81), and the International Union of Operating Engineers (Local # 150 AFL-CIO) *(collectively the "unions")*. In their removal peti-

tion, the unions argue that plaintiff's complaint alleges a federal question and base their removal under 28 U.S.C. § 1441(b). Specifically, the unions maintain that plaintiff's complaint contains allegations "which fall within the framework of Section 303 of the Labor-Management Relations Act" ("LMRA"). In seeking remand, the plaintiff City counters that its complaint alleges no federal claim.

## II.

Section 303 of the LMRA allows a civil action in district court by any person harmed in his business or property by unlawful secondary activity in violation of 29 U.S.C. § 158(b)(4). Section 158(b)(4) makes it an unfair labor practice for a labor union or its agents to threaten, coerce, or restrain any person engaged in commerce where an object of such threats, coercion, or restraint is to force any person to cease dealing or otherwise doing business with any other person. Thus, § 158(b)(4) proscribes secondary activity [1] by unions but expressly allows them to engage in primary activity.[2] The distinction between primary and secondary activity is not always clear, *Landgrebe Motor Transport, Inc. v. District 72, International Association of Machinists and Aerospace Workers, AFL–CIO*, 763 F.2d 241, 249 (7th Cir.1985), however, the statute requires that the distinction be made. *T.W. Helgesen v. International Association of Bridge, Structural & Ornamental Ironworkers*, 548 F.2d 175, 181 (7th Cir.1977).

■ In drawing the line between primary and secondary activity, courts gener-

ally look to the "object" of the union's picketing; "[a]ny 'secondary' objective will bring the union's action within the reach of [§ 158(b)(4)]." *George E. Hoffman & Sons, Inc. v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local No. 627*, 617 F.2d 1234, 1241 (7th Cir.1980) (citing *NLRB v. Enterprise Association of Pipefitters Local 638*, 429 U.S. 507, 530 n. 17, 97 S.Ct. 891, 904 n. 17, 51 L.Ed.2d 1 (1977)).[3] Thus, if an object of the union's conduct is to bring indirect pressure on the primary employer by involving neutral or secondary employers in the dispute, the conduct is secondary and unlawful under § 158(b)(4). *Id.; see also United Scenic Artists v. NLRB*, 762 F.2d 1027, 1232–33 (D.C.Cir. 1985); *Abreen Corporation v. Laborers International Union*, 709 F.2d 748 754 (1st Cir.1983).

■ To determine the propriety of removal, this court must decide whether the face of plaintiff's complaint can be construed to allege a federal question, that is, a claim of unlawful secondary activity under § 158(b)(4). 28 U.S.C. § 1441(b); *Caterpillar Inc. v. Williams*, — U.S. —, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987); *Lingle v. Norge Division of Magic Chef*, 823 F.2d 1031, 1039 (7th Cir.1987) (en banc). The presence or absence of a federal question is governed by the well-pleaded complaint rule "which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar*, 107 S.Ct. at 2429 (citing *Gully v. First National Bank*, 299 U.S. 109, 112–13, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936)).[4]

---

1. "Secondary activity may be defined as activity in which the union applies economic pressure to a person with whom the union has no dispute regarding its own terms of employment in order to induce that person to cease doing business with, and thereby increase the pressure on, another employer, called the primary employer, with whom the union does have such a dispute." *Landgrebe Motor Transport, Inc. v. District 72, International Association of Machinists and Aerospace Workers, AFL–CIO*, 763 F.2d 241, 244 (7th Cir.1985).

2. "Primary strikes are those which are directed against the employer with whom the union has the dispute concerning terms of employment.

Primary picketing is picketing, generally at the situs of the primary employer, that attempts or is intended to increase the direct economic pressure on the primary employer by inducing others to honor the strike." *Landgrebe*, 763 F.2d at 245.

3. The Seventh Circuit reaffirmed the use of the object-of-the-union's-picketing test in cases like the present one involving a common situs in *Landgrebe*, 763 F.2d at 246–47 n. 3.

4. The policy served by the well-pleaded complaint rule is the recognition that the plaintiff is seen as the master of his complaint, thus, "[j]ur-

However, even though a plaintiff is the "master" of his complaint, "he or she may not purposely frame his or her action under state law and omit the federal questions that are *essential* to recovery." *Lingle,* 823 F.2d at 1040 (emphasis added).

> To bring a case within the statute the claim or right created by the Constitution or laws of the United States *must be an essential element* of the plaintiff's cause of action and the subject of a genuine and present controversy. Moreover, the controversy must be revealed in the complaint unaided by the answer or petition for removal.

*Oglesby v. RCA Corp.,* 752 F.2d 272, 275 (7th Cir.1985) (citing *Gully,* 299 U.S. at 112–14, 57 S.Ct. at 97–98) (emphasis added). In the present case, removal is proper if there are sufficient allegations in the complaint to show that an object of the unions' conduct is to bring indirect pressure on a primary employer by involving a neutral or secondary employer in the dispute.

The City's complaint[5] alleges that the City of Valparaiso is in the process of building a storm detention facility/city park within the city limits in an area bounded by Calumet Avenue, McCord Road, Fairlane Subdivision and Evans Avenue (the "project site"). The City further alleges that the defendant unions have engaged in violent activities at the project site and have congregated and demonstrated along McCord Road so as to impede and obstruct contractors, subcontractors and suppliers from gaining access to the project site. The City requests injunctive relief restraining the defendants from such conduct in the future in order to avoid irreparable injury to the City caused by the cessation of work at the project site.

The complaint does not expressly allege a violation of § 158(b)(4); the complaint does not even identify a primary or a secondary employer. Such omissions do not, in and of themselves, resolve the issue of removability; after all, "artful pleading" by a plaintiff cannot conceal the federal questions inherent in his cliam. *Lingle,* 823 F.2d at 1040. The critical omission from the City's complaint is the absence of any allegation that an object of the unions' conduct is to put pressure on a neutral or secondary party to cease doing business with a primary employer. *Hoffman,* 617 F.2d at 1241. Because this is a necessary element for relief under § 158(b)(4), without it, the City's complaint does not implicate a federal question. That state law can provide relief in the face of violent activity in this situation is clear. *Farmer v. United Brotherhood of Carpenters and Joiners of America, Local 25,* 430 U.S. 290, 301–03, 97 S.Ct. 1056, 1064–65, 51 L.Ed.2d 338 (1977) (recognizing a state's substantial interest in protecting its citizens from violent and outrageous conduct even in the area labor disputes); *see also, Keehr v. Consoldiated Freightways of Delaware, Inc.,* 825 F.2d 133, 136–37 (7th Cir.1987); *Scott v. Moore,* 640 F.2d 708, 714 (5th Cir.1981) (noting that nothing in the Norris

isdiction may not be sustained on a theory that the plaintiff has not advanced." *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* —— U.S. ——, 106 S.Ct. 3229, 3233 n. 6, 92 L.Ed.2d 650 (1986); *see Lingle,* 823 F.2d at 1040. An exception or independent corollary to the well-pleaded complaint rule is the "complete pre-emption" doctrine. This doctrine holds that the pre-emptive force of a statute is so extraordinary that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metropolitan Life Insurance Co. v. Taylor,* —— U.S. ——, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987) (state contract and tort claims completely preempted by Employee Retirement Income Security Act of 1974). In the labor area, the complete pre-emption doctrine is applied primarily in cases involving a violation of contracts between an employer and a labor organization because of the pre-emptive force of § 301 of the LMRA. *Caterpillar* 107 S.Ct. at 2430.

The present complaint does not seek to enforce any contractual rights, in fact, the complaint makes no reference to a collective bargaining agreement at all. Because § 301 is not implicated by the City's complaint and because the particular relief sought by the City has not been completely pre-empted, *see* discussion in text *infra,* the court finds that the doctrine of complete pre-emption is not applicable here.

5. The court considers the City's amended complaint which was filed in state court on September 8, 1987. The propriety of removal must be based on the amended complaint because defendants filed their petition for removal the following day, September 9.

LaGuardia Act, 29 U.S.C. § 4, which places limits on courts' power to issue injunctions in labor disputes, denies courts the power to enjoin violence, breaches of the peace, or criminal acts simply because they may be committed by persons participating or interested in a labor dispute); *United Steelworkers of America, AFL–CIO–CLC v. Northern Indiana Public Service Co.*, 436 N.E.2d 826, 829 n. 2 (Ind.App.1982) (stating that the federal Norris LaGuardia Act is identical to Indiana's Anti-Injunction Act, I.C. §§ 22–6–1–1 *et seq.*, and that federal judicial decisions are "valuable aid[s]" in construing Indiana's law). Thus, injunctive relief is possible, even in state court, under the very narrow strictures of Norris LaGuardia without implicating § 158(b)(4) of the LMRA.

Finally, the court recognizes that decisions concerning the existence of federal jurisdiction can often be difficult, especially when applying a well-pleaded complaint analysis. *Franchise Tax Board of California v. Construction Laborers Vacation Trust For Southern California*, 463 U.S. 1, 7–10, 103 S.Ct. 2841, 2845–47, 77 L.Ed.2d 420 (1983). However, regardless of how difficult the task, federal courts must always keep in mind that they are courts of limited jurisdiction; consequently, the presumption is that a federal court lacks jurisdiction in a particular case until it has been demonstrated that jurisdiction over the subject matter exists. *King Bridge Co. v. Otoe County*, 120 U.S. 225, 226, 7 S.Ct. 552, 553, 30 L.Ed. 623 (1889); *Oliver v. Trunkline Gas Co.*, 789 F.2d 341, 343 (5th Cir.1986); *see generally*, 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3522 at 62 and n. 1 (2d ed. 1984 & Supp.1987). "The first rule of judicial self-restraint in the federal courts is

that those courts respect the limitation that the Constitution and Congress have placed on federal judicial power." *Hemmings v. Barian*, 822 F.2d 688, 693 (7th Cir.1987).

In light of these jurisdictional mandates and finding that the City's complaint, on its face, does not implicate § 158(b)(4), the court concludes that removal was improvident and that this case should be remanded.[6] 28 U.S.C. § 1447(c).

### CONCLUSION

Based on the foregoing, the court now ORDERS that the City of Valparaiso's motion to remand is hereby GRANTED.

---

6. The City also requested Fed.R.Civ.P. 11 sanctions on the grounds that the unions' removal petition was frivolous and filed for the sole purpose of delay. The issues in this case were far from one sided. As noted earlier by the court, the application of the well-pleaded complaint rule is not a well-defined and settled process. *Franchise Tax*, 463 U.S. at 7–10, 103 S.Ct. at 2845–47. Moreover, the court ruled on the City's remand motion with dispatch in order to preserve the status quo of the parties in state court; as a result, the unions were not given an

opportunity to respond. Although the court is of the opinion that a response was not necessary in this instance (after all, in determining the propriety of a removal, the court must make its decision based on the contents of the complaint, unaided by an answer or the removal petition, *Oglesby*, 752 F.2d at 275), a response by the unions would certainly have demonstrated that their attempt at removal was not wholly without merit. Thus, Rule 11 sanctions are inappropriate here; plaintiff's motion for sanctions is DENIED accordingly.