## AMOCO CHEMICAL COMPANY and Amoco Corporation

v.

**TEX TIN CORPORATION, Associated Metals and Minerals Corporation, Asoma Corporation, Steel Holdings Corporation, Macsteel, Macsteel, Inc., The Estate of Franz A. Lissauer, Diana Fraid Lissauer, Emil Lissauer, Gordon Lissauer, Sharon Drakides, Hannah Hirschfeld, Peter Eliel, Unknown Lissauer Family Members, Colin H. Benjamin, Steve E. Eliel, Donald P. Wefer, and Salvatore Purpura.**

Civ. A. No. G–95–405.

United States District Court, S.D. Texas, Galveston Division.

Oct. 24, 1995.

Katherine McIlroy Shoebotham, Weiss & Associates, Theodore F. Weiss, Jr., Attorney at Law, Houston, TX, for Amoco Chemical Company, Amoco Corporation.

Ross Citti, Jackson & Walker, Houston, TX, for Tex Tin Corporation, Associated Metals and Minerals Corporation, Asoma Corporation, Steel Holdings Corporation, Macsteel, Macsteel, Inc., Estate of Franz A. Lissauer, Diana Fraid Lissauer, Emil Lissauer, Gordon Lissauer, Sharon Drakides, Hannah Hirschfeld, Peter Eliel, Unknown Lissauer Family Members, Colin H. Benjamin, Steve E. Eliel, Donald P. Wefer, Salvatore Purpura.

### ORDER DENYING MOTION TO REMAND

KENT, District Judge.

Plaintiffs, Amoco Chemical Co. ("Amoco") and Amoco Corp., commenced this action in the 56th Judicial District Court of Galveston County, Texas. The gravamen of Plaintiffs' Complaint is the alleged breach of a private contract which obligated Defendant Tex Tin Corp. ("Tex Tin") to reimburse Amoco for expenses incurred under an Administrative Order on Consent involving the United States Environmental Protection Agency ("EPA"). Pursuant to 28 U.S.C.A. § 1446 (West 1994 & Supp 1995), Defendants removed this case to the United States District Court for the Southern District of Texas, Galveston Division, on the basis that the breach of contract cause of action is one "arising under" federal law within the mean-

ing of 28 U.S.C.A. § 1331 (West 1993). Now before the Court is Plaintiffs' Motion to Remand for lack of subject matter jurisdiction pursuant to 28 U.S.C.A. § 1447(c) (West 1994) and Plaintiffs' Motion for Costs and Attorneys Fees for improper removal under that section.[1] These Motions are **DENIED.**

## I. Background

For purposes of Plaintiffs' Motion to Remand, the Court accepts as true all relevant allegations contained in the Complaint. *Willy v. Coastal Corp.*, 855 F.2d 1160 (5th Cir. 1988); *see also Kidd v. Southwest Airlines, Co.*, 891 F.2d 540, 542 (5th Cir.1990) ("In cases that have been removed to federal court, the plaintiff's complaint rather than the removal petition must establish federal jurisdiction."). Those allegations are as follows:

Amoco and Tex Tin own adjacent lots of real property in Texas City, Texas, which are hereinafter referred to collectively as "the Texas City Site" or "the Site." The EPA, acting on referrals from the Texas Department of Water Resources and the Texas Control Board, concluded that the Texas City Site released or threatened release of hazardous substances, pollutants, or contaminants. This finding prompted the EPA to propose inclusion of the Texas City Site on the National Priorities List ("NPL"), which lists those sites deemed federal priorities for long-term remedial evaluation and response.

Thereafter, at the EPA's initiative, Amoco, Tex Tin, and the EPA entered into an Administrative Order on Consent ("AOC") to settle the EPA's claims against Amoco and Tex Tin under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C.A. §§ 9601–75 (West

1995). The AOC directs Amoco and Tex Tin to conduct a remedial investigation/feasibility study ("RI/FS") of the Texas City Site during such time as the Site is listed on the NPL. The AOC specifically includes a court order among those events capable of terminating Amoco and Tex Tin's RI/FS obligations:

[Amoco and Tex Tin's] obligations to EPA under this Agreement shall terminate and be deemed satisfied upon the earliest of the following events:

.    .    .    .    .

C. Any decision by an authorized court reversing or enjoining the listing of the site on the NPL.

The AOC makes Amoco and Tex Tin jointly and severally liable for all expenses incurred in connection with the RI/FS.

To provide for joint administration of the RI/FS and to allocate the cost of performing their AOC obligations, Amoco and Tex Tin, along with one guarantor for each, entered into a separate, private contract ("Funding Agreement"). The Funding Agreement requires the parties to hire a consultant to perform the RI/FS. While obligations are owing under the AOC, Amoco must pay ten percent and Tex Tin ninety percent of all amounts due to the hired consultant and the EPA. Once AOC obligations cease, the Funding Agreement directs reallocation of expended funds according to the relative RI/FS cost attributable to the parties' respective lots of property.

Five months after the AOC and the Funding Agreement were executed, the Texas City Site was listed on the NPL. Tex Tin then challenged this listing by filing a petition for review in the United States Court of

---

1. The Court considers Plaintiffs' Motion to Remand before considering other Motions which do not go to the question of subject matter jurisdiction. *Cf. Walker v. Savell*, 335 F.2d 536, 537 (5th Cir.1964) (holding that a motion to dismiss for lack of personal jurisdiction may be decided prior to a motion to remand which is *not* based on lack of subject matter jurisdiction) (emphasis added). Other pending motions include: Defendant Stefan Eliel's Motion to Dismiss for lack of personal jurisdiction; the Motion of Defendants Emil Lissauer, Gordon Lissauer, Sharon Drakides, Hannah Hirschfeld, Peter Eliel, The Estate

of Franz Lissauer, and Unknown Lissauer Family Members to Dismiss for lack of personal jurisdiction and, subject to such Motion, the Motion of these Defendants for Summary Judgment; the Motion of Defendants Steel Holdings Corp., Colin Benjamin, Donald Wefer, and Salvatore Purpura to Dismiss for lack of personal jurisdiction; and the Motion of Defendants Tex Tin Corp., Metallon Holdings Corp., Asoma Corp., Steel Hldigns Corp., Macsteel Inc., Coling Benjamin, Donald Wefer, and Salvatore Purpura to Dismiss for failure to state a claim upon which relief may be granted.

Appeals for the District of Columbia Circuit. While Tex Tin's action was pending, Amoco and Tex Tin uneventfully abided by the terms of the Funding Agreement. But, once the Court rendered its decision in *Tex Tin Corp. v. U.S. Envtl. Protection Agency ("Tex Tin I")*, 935 F.2d 1321 (D.C.Cir.1991), Tex Tin notified the EPA and Amoco that the parties' obligations under the AOC had been terminated. Despite the EPA's threat to penalize Tex Tin for discontinuation of the RI/FS, Tex Tin refused to proceed as before. Amoco, aware that the EPA disagreed with Tex Tin's view of *Tex Tin I*, maintained the RI/FS without Tex Tin's continued financial contributions. Only after Amoco expended an additional $ 8.1 million conducting the RI/FS was the Texas City Site unequivocally removed from the NPL in *Tex Tin Corp. v. U.S. Envtl. Protection Agency ("Tex Tin II")*, 992 F.2d 353 (D.C.Cir.1993).

Amoco has made repeated requests for money allegedly owed by Tex Tin under the Funding Agreement for the $ 8.1 million in expenditures. Acting consistently with its previously stated position, Tex Tin has refused to fund any of Amoco's post-*Tex Tin I* efforts. Amoco now seeks damages, declaratory relief, and attorneys fees for breach of contract, fraud, and related wrongs.

## II. Analysis

An independent jurisdictional basis must exist for each claim adjudicated by this Court. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) (discussing instances in which the Constitution permits District Courts to adjudicate pendent state law claims). As the defendant, Tex Tin bears the burden of proving subject matter jurisdiction. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S.Ct. 35, 37, 66 L.Ed. 144 (1921) (stating that the defendant bears the burden of establishing subject matter jurisdiction for removed actions); *Willy*, 855 F.2d at 1164 (same). Tex Tin contends that section 1331 confers subject matter jurisdiction over Amoco's breach of contract claim and implicitly relies upon section 1367 for all remaining claims. The Court's analysis proceeds accordingly. *See Willy*, 855 F.2d at 1164 (focusing exclusively on § 1331 as a basis for subject matter jurisdiction where the defendant did not claim diversity of citizenship was present).

Section 1331 provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C.A. § 1331; *see also* 28 U.S.C.A. § 1447(b) (West 1994) (providing the Court with jurisdiction over all removed cases falling within section 1331's grant of original jurisdiction). Despite its strong resemblance to section 2 of Article III, Section 1331 is narrower in scope. *E.g., Verlinden B.V. v. Central Bank of Nig.*, 461 U.S. 480, 495, 103 S.Ct. 1962, 1972, 76 L.Ed.2d 81 (1983) ("Article III 'arising under' jurisdiction is broader than federal-question jurisdiction under § 1331...."); *see also* U.S. Const. art III., § 2 ("The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority...."). A simple but precise statement of the statute's meaning has not yet been devised: "[N]o one formulation of [section 1331] captures all of the nuances involved in determining which cases fall within the federal court's original jurisdiction." *Kidd*, 891 F.2d at 542. The United States Supreme Court has specifically declined to recognize an "automatic test" for federal question jurisdiction. *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 814, 106 S.Ct. 3229, 3235, 92 L.Ed.2d 650 (1986); *see also Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal*, 463 U.S. 1, 8, 103 S.Ct. 2841, 2845, 77 L.Ed.2d 420 (1983). Instead, the Court has consistently emphasized "the need for careful judgments about the exercise of federal judicial power in an area of uncertain jurisdiction." *Merrell Dow*, 478 U.S. at 814, 106 S.Ct. at 3235; *see also id.* at 808, 106 S.Ct. at 3232 at ("There is no 'single, precise definition' of [federal question jurisdiction]; rather, 'the phrase 'arising under' masks a welter of issues....' " (quoting *Franchise Tax Bd.*, 463 U.S. at 8, 103 S.Ct. at 2846)); *Franchise Tax Bd.*, 463 U.S. at 8, 103 S.Ct. at 2846 ("Since the first version of § 1331 was enacted ... [it] has resisted all attempts to frame a single, precise definition for determining

which cases fall within, and which cases fall outside, the original jurisdiction of the district courts."); *Gully v. First Nat'l Bank,* 299 U.S. 109, 117, 57 S.Ct. 96, 100, 81 L.Ed. 70 (1936) (stressing the importance of common sense to making jurisdictional determinations).

As a starting point, the jurisdictional analysis centers on the plaintiff's well-pleaded complaint. *E.g., Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987); *Kidd,* 891 F.2d at 542. "Congress has given the lower federal courts jurisdiction to hear, originally or by removal from a state court, only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd.,* 463 U.S. at 27, 103 S.Ct. at 2856. In other words, a well-pleaded complaint must reveal a federal question. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987); *Sarmiento v. Texas Bd. of Veterinary Medical Examiners,* 939 F.2d 1242, 1245 (5th Cir.1991). This rubric, coined "the well-pleaded complaint rule," *e.g., Franchise Tax Bd.,* 463 U.S. at 9, 103 S.Ct. at 2842, forbids a plaintiff from obtaining federal jurisdiction simply by anticipating a federal question as part of a defense or by phrasing a state law claim in federal law terms. *E.g., Louisville & Nashville R.R. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908) (holding that a federal question must appear in "the plaintiff's statement of his own cause of action" rather than "some anticipated defense to his cause of action"); *Kidd,* 891 F.2d at 544 (5th Cir.1990) ("The Court will not permit [a party] to transform a state-law action into a federal claim merely by rephrasing the claim in terms of federal law."). Nor may a plaintiff defeat federal jurisdiction by omitting a federal question from the complaint, for example by couching in state law terms what is in substance a federal claim. *See Metropolitan Life Ins.,* 481 U.S. at 63–64, 107 S.Ct. at 1546; *Aquafaith Shipping Ltd. v. Jarillas,* 963 F.2d 806, 808 (5th Cir.) ("The court may find that the plaintiff's claims arise under federal law, even though the plaintiff has not characterized them as federal claims."), *cert. denied,* —— U.S. ——, 113 S.Ct. 413, 121 L.Ed.2d 337 (1992). As "master of the complaint," though, the plaintiff may choose to pursue state causes of action exclusively despite the availability of federal causes of action. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987) ("The ... plaintiff ... may avoid federal jurisdiction by exclusive reliance on state law."); *see also Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913) ("[T]he party who brings a suit is master to decide what law he will rely upon, and therefore does determine whether he will bring a 'suit arising under' [a] law of the United States by his declaration or bill.").

Looking to the well-pleaded complaint, the Court must consider the importance of federal law to the litigation. *Maroney v. University Interscholastic League,* 764 F.2d 403, 405 (5th Cir.1985) ("The [jurisdictional] test [looks] to the legal substance of the plaintiff's claim, not to the value of the interests implicated."). If federal law creates the cause of action, then federal question jurisdiction is present. *American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916) ("A suit arises under the law that creates the cause of action."); *see also Franchise Tax Bd.,* 463 U.S. at 9, 103 S.Ct. at 2846 ("[I]t is well settled that Justice Holmes' test [stated in *American Well Works* ] is more useful for describing the vast majority of cases that come within the district courts' original jurisdiction than it is for describing which cases are beyond district court jurisdiction"). In addition, causes of action created by state law "often" give rise to federal jurisdiction, because federal question jurisdiction exists over claims created by state law which "necessarily turn[ ] on some construction of federal law." *Franchise Tax Bd.,* 463 U.S. at 9, 103 S.Ct. at 2846 (citing as examples *Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921), and *Hopkins v. Walker,* 244 U.S. 486, 37 S.Ct. 711, 61 L.Ed. 1270 (1917)). "Even though state law creates [the plaintiff's] causes of action, its case might still

'arise under' the laws of the United States if a well-pleaded complaint establishe[s] that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd.*, 463 U.S. at 13, 103 S.Ct. at 2848 (1983). A plaintiff's right to relief presents a substantial question of federal law if it is "such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another." *Gully*, 299 U.S. at 112, 57 S.Ct. at 97.

Plaintiffs' right to relief for breach of contract is created by state law. Plaintiffs must prove the following allegations to recover on their breach of contract claim: (1) the existence of a contract; (2) the creation of duties under the contract; (3) a breach of a duty by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Snyder v. Eanes Indep. Sch. Dist.*, 860 S.W.2d 692, 695 (Tex.App.—Austin 1993, writ denied); *Corpus Christi v. Bayfront Assocs. Ltd.*, 814 S.W.2d 98, 103 (Tex.App.—Corpus Christi 1991, writ denied). As revealed in the Complaint, the Funding Agreement serves as the sole basis for Plaintiffs' breach of contract claim. Since the Funding Agreement allocates only those expenses incurred under the AOC, the AOC must be interpreted to determine whether any duties actually arose under the Funding Agreement. In other words, Plaintiffs cannot show a duty of reimbursement arose under the Funding Agreement without proving that Amoco's expenditures were made pursuant to the AOC. Interpretation of the AOC, like interpretation of all contracts between federal government agencies and private parties, is governed by federal law. *Priebe & Sons v. United States*, 332 U.S. 407, 414, 68 S.Ct. 123, 127, 92 L.Ed. 32 (1947) (Black, J., dissenting) ("[T]he decisions of this Court ... hav[e] established that the construction and validity of *all* government contracts are governed by federal law....") (emphasis in original) (citing *National Metropolitan Bank v. United States*, 323 U.S. 454, 65 S.Ct. 354, 89 L.Ed. 383 (1945), *United States v. Allegheny County*, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209 (1944), and *Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87

L.Ed. 838 (1943)); *Falls Riverway Realty, Inc. v. City of Niagara Falls*, 754 F.2d 49, 55 n. 4 (2d Cir.1985) (noting that federal common law governs the interpretation of government contracts) (citing *Priebe & Sons*, 332 U.S. at 414, 68 S.Ct. at 127). Reliance on federal law, therefore, is essential to the success of Plaintiffs' breach of contract claim, irrespective of any defenses raised. Accordingly, this Court has subject matter jurisdiction over this claim under section 1331. *See Katz v. Cisneros*, 16 F.3d 1204, 1207 (Fed. Cir.1994) ("Even where a case is contractual, however, the presence of issues which require the interpretation of federal law and regulation necessarily give rise to federal questions [sufficient to invoke § 1331]"); *A & S Council Oil Co. v. Saiki*, 799 F.Supp. 1221, 1230 (D.D.C.1992) ("[W]hile plaintiffs' causes of action are not based specifically on their contracts with the government, they do arise from contracts to which the government is a party. Subject matter jurisdiction, then, exists under 28 U.S.C. § 1331 ... [because] contracts with the federal government are governed by federal common law.") (footnote and citations omitted), *rev'd sub nom. on other grounds A & S Council Oil Co., Inc. v. Lader*, 56 F.3d 234 (1995) (reversing because the plaintiffs failed to exhaust administrative remedies).

The Court notes that its finding of federal question jurisdiction in this case is consistent with opinions rendered in analytically similar situations by the United States Supreme Court and the United States Court of Appeals for the Fifth Circuit. In *Gully v. First Nat'l Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936), a state tax collector sued in state court to enforce a contract between two national banking entities under which one assumed the tax liabilities of the other. *Id.* at 111–12, 57 S.Ct. at 97. The bank removed to federal court, asserting that federal question jurisdiction existed because no tax liability was owing under the contract in the absence of a federal statute creating the power to tax national banks. *Id.* at 112, 57 S.Ct. at 97. The Supreme Court rejected this rationale, finding that "[t]here is no necessary connection between the enforcement of such a contract according to its terms and

the existence of a controversy arising under federal law." *Id.* at 114, 57 S.Ct. at 98. Acknowledging that the federal statute was a prerequisite to the tax collector's suit on the contract, the Supreme Court warned in an oft quoted passage:

What is needed is something of that commonsense accommodation of judgment to kaleidoscopic situations. . . . One could carry the search for causes backward, almost without end. . . . To set bounds to the pursuit, the courts have formulated the distinction between controversies that are basic and those that are collateral, between disputes that are necessary and those that are merely possible.

*Id.* at 115–18, 57 S.Ct. at 98–100 (holding that "[t]he most one can say is that a question of federal law is lurking in the background, just as farther in the background there lurks a question of constitutional law, the question of state power in our federal form of government."). Unlike the contract discussed in *Gully,* though, the Funding Agreement is not "valid and enforceable without reference to a federal law." *Id.* at 114, 57 S.Ct. at 98. To the contrary, Plaintiff cannot establish a prima facie case for breach of the Funding Agreement without referring to the AOC, the interpretation of which is governed by federal law. *See supra.* Furthermore, interpretation of the AOC lies at the heart of the controversy between Plaintiffs and Defendants, making the federal issue "basic" as opposed to "collateral" as the terms are used in *Gully.* *Gully,* therefore, supports this Court's finding of federal question jurisdiction in the instant case.

In *Oliver v. Trunkline Gas Co.,* 789 F.2d 341 (5th Cir.1986), the United States Court of Appeals for the Fifth Circuit, concluding that subject matter jurisdiction was lacking, dismissed a breach of contract action in which the defendant allegedly failed to pay the maximum rate allowed by federal law for natural gas purchased from the plaintiff. *Id.* at 343. In an opinion denying the plaintiffs' petition for rehearing, the Court stated that "a private contract can [not] give rise to federal-question jurisdiction simply by 'incorporating' some federal regulatory standard that would not have been binding on the

parties by its own force." *Oliver v. Trunkline Gas Co.,* 796 F.2d 86, 89–90 (5th Cir. 1986) (emphasis omitted). This statement in *Oliver,* however, does not control the outcome of the instant case. The Funding Agreement does not merely refer to a federal standard as a quantitative measure of funds owing to one party; the Funding Agreement was devised for the very purpose of allocating obligations existing independently under the AOC, which must be interpreted according to federal law principles. This distinction regarding substantiality of the federal claim to the litigation takes the instant case out of *Oliver*'s ambit, because the *Oliver* situation concerns the adequacy of performance whereas the present case involves the issue of whether a duty to perform arose in the first instance. *Cf. Superior Oil Co. v. Pioneer Corp.,* 706 F.2d 603, 607 (5th Cir.1983) (holding that the well-pleaded complaint rule barred the district court from exercising federal question jurisdiction over the plaintiff's breach of contract action because "the [federally imposed] price ceilings do not give the gas producer a federal right to receive a particular price for its gas" (emphasis omitted)), *cert. denied,* 464 U.S. 1041, 104 S.Ct. 706, 79 L.Ed.2d 171 (1984). The above-quoted statement of *Oliver*'s holding also distinguishes *Oliver* from the instant case—not only does this case not involve a federal regulatory standard, but the AOC creates obligations governed by federal law which would be binding on the parties without the Funding Agreement, namely joint and several liability for failing to conduct the RI/FS. *Oliver,* therefore, does not preclude this Court from exercising jurisdiction over the case at bar.

The United States Court of Appeals for the Fifth Circuit also decided *Epps v. Bexar–Medina–Atascosa Counties Water Improvement Dist. No. 1,* 665 F.2d 594, 595 (5th Cir.1982), another case meriting individual discussion. In *Epps,* the Court held that subject matter jurisdiction was lacking over a suit involving the enforcement of contractual rights recognized in a federal judicial opinion. *Id.* at 594–95; *see also Illinois v. City of Milwaukee,* 406 U.S. 91, 99, 92 S.Ct. 1385, 1390, 31 L.Ed.2d 712 (1972) (holding that, as used in section 1331, the term "law" includes

"court decisions"). The Court opined: "[t]he mere fact that a suit involves the construction and effect of an earlier order or judgment of a federal court does not *automatically* clothe the dispute in a federal question jurisdiction garment." *Id.* at 595 (emphasis added). Although the case at bar will likely involve assessing the impact of *Tex Tin I* on the parties' AOC obligations, this Court may nonetheless exercise jurisdiction without doing violence to *Epps*. Most importantly, the need to interpret the AOC, not the need to interpret *Tex Tin I*, serves as the basis for federal question jurisdiction in the present case. *See* discussion *supra*. In addition, *Tex Tin I*, unlike the federal order discussed in *Epps*, does not "merely appl[y] Texas law" or "specifically recognize[ ] that subsequent regulation and administration of the rights of the parties ... be subject to the Texas authorities." To the contrary, *Tex Tin I* involves judicial scrutiny of a federal agency's actions and orders a remand of the case. *See Tex Tin I*, 935 F.2d 1321 (D.C.Cir.1991). This Court may therefore exercise jurisdiction over Plaintiffs' breach of contract claim consistently with *Epps*.

### III. Conclusion

For the reasons stated above, the Court concludes that section 1331 provides this Court with subject matter jurisdiction over Plaintiffs' breach of contract claim. The Court has supplemental jurisdiction over Plaintiffs' remaining state law claims, all of which stem from a common nucleus of operative fact.[2] 28 U.S.C.A. § 1367 (West 1993); *see also Gibbs* 383 U.S. at 725, 86 S.Ct. at 1138 (holding that the exercise of pendent jurisdiction is constitutional if the federal claim is sufficiently substantive to confer jurisdiction, the state and federal claims derive from "a common nucleus of operative fact," and all of the plaintiff's claims would ordinarily be expected to be tried in one judicial proceeding). Plaintiffs' Motion to Remand pursuant to section 1447(c) is accordingly **DENIED.** Consequently, Plaintiff's Motion

for Costs and Attorneys Fees under that section is also **DENIED.**

**IT IS SO ORDERED.**

---

2. No party asserts, and the Court does not find, that 28 U.S.C.A. § 1367(c) grants discretion in this case to decline the exercise of supplemental jurisdiction over state law claims related to the breach of contract claim. 28 U.S.C.A. § 1367(c)(1)–(4) (West 1993).