GUARDIAN NATIONAL ACCEPTANCE CORPORATION, a/k/a/ General Acceptance Corporation, Plaintiff,

v.

SWARTZLANDER MOTORS, INC., Defendant.

No. 3:96–CV–0794 AS.

United States District Court, N.D. Indiana, South Bend Division.

April 29, 1997.

1138

Edward A. Keirn and Karen L. Kovalsky, Barnes and Thornburg, Indianapolis, IN, for plaintiff.

David P. Jones, Newby, Lewis, Kaminski and Jones, LaPorte, IN, for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

On October 24, 1996, the plaintiff, Guardian National Acceptance Corporation, also know as General Acceptance Corporation ("Guardian"), filed the present cause, alleging two separate breach of contract claims against the defendant, Swartzlander Motors, Inc. ("Swartzlander"). This cause is now before the court pursuant to Swartzlander's motion to dismiss the complaint because of a lack of subject matter jurisdiction, filed on December 20, 1996.

### I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a prior cause of action in this court entitled *Bridges v. Swartzlander Motors, Inc., et al.,* Cause No. 3:95–cv–0741 AS. The factual background of that case was as follows. On September 19, 1994, Ms. Diane Bridges went to Swartzlander Motors to purchase an automobile. She selected a 1994 Pontiac Grand Am, which possessed a Manufacturer's Suggested Retail Price ("MSRP") of $16,483.00, and signed a purchase order for the Pontiac. Nonetheless, Swartzlander failed to have Bridges' purchase order signed by an authorized member of its staff. In addition, Bridges applied for credit with the General Motors Acceptance Corporation ("GMAC") in order to finance the purchase. However, because Bridges had recently been discharged from bankruptcy, GMAC declined to approve her

credit application. Consequently, Bridges entered into a retail installment contract and security agreement with Swartzlander.

On September 27, 1994, Bridges returned to Swartzlander to complete the purchase. On that date, she and a representative of Swartzlander each signed a purchase order and a retail installment contract for the purchase of the Pontiac. Both the contract and the purchase order listed the price of the car at $19,605.60.[1] Also on September 27, Swartzlander entered into an express written assignment agreement with Guardian ("the Assignment Agreement"), whereby Swartzlander assigned its right, title and interest in Bridges' contract to Guardian for valuable consideration.

Sometime after completing the agreement, Bridges became upset over the increase in the automobile's final cost and attempted to rescind the agreement. She alleged that Swartzlander informed her that the purchase price set forth in the agreement was higher than the MSRP due to Guardian's requirement that she purchase credit insurance in order to obtain the loan. After being unable to cancel the agreement with Guardian, Bridges attempted to re-finance the car through another financial institution; however, she was unable to do so.

After failing to refinance, Bridges filed suit in this court. In that action, Bridges sued both Swartzlander and Guardian, asserting violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, as well as several state law claims. Both Swartzlander and Guardian subsequently filed motions for summary judgment. On May 14, 1996, this court granted Guardian's summary judgment motion, dismissing Bridges' claims, in part because Guardian was not a "creditor" under the Truth in Lending Act.[2] However, the court denied Swartzlander's motion for summary judgment, finding that a genuine issue of material fact existed on the Truth in Lending Act claims against Swartzlander. Ulti-

mately, Bridges' case against Swartzlander was resolved prior to trial without a determination by this court as to Swartzlander's liability under the Truth in Lending Act.

On October 24, 1996, Guardian instituted the present cause of action against Swartzlander. In its complaint, Guardian alleges that Swartzlander breached the contract it assigned to Guardian. As part of the Assignment Agreement, Guardian submits that Swartzlander warranted: (1) that the sale of Bridges' automobile was completed in accordance with all laws and regulations affecting the sale, including, but not limited to, the Truth in Lending Act; (2) that all disclosures required by federal and state law were properly made in the contract; and (3) that the contract was not subject to any claims or defenses on the part of the buyer. Guardian also contends that the Assignment Agreement provided that if any of the warranties listed in the contract were breached or untrue, then Swartzlander would, upon Guardian's demand, repurchase the contract in the amount of the unpaid balance. In addition, Guardian asserts that, in the Assignment Agreement, Swartzlander agreed to pay the costs and expenses for Guardian's defense, including its attorneys' fees, of any suit arising under the Truth in Lending Act or other action resulting from the contract.

Guardian maintains that shortly after Bridges filed her complaint, it demanded that Swartzlander comply with its obligations under the Assignment Agreement by repurchasing Bridges' contract and defending Guardian in Bridges' lawsuit. However, the plaintiff alleges that Swartzlander refused to repurchase the contract or defend it in the Bridges' suit. Thus, Guardian now claims that Swartzlander has breached its warranties set forth in the Assignment Agreement. As a result, Guardian seeks indemnification for its costs of defending Bridges' suit, including its attorneys' fees in the amount of $17,064.62, plus prejudgment interest. In

---

1. According to the record, the price listed on the purchase order and the automobile's MSRP differed by over three thousand dollars. In Bridges' complaint, Bridges asserted that Swartzlander allegedly attributed the difference in price to Bridges' poor credit history.

2. In addressing the decision in *Bridges v. Swartzlander,* the court will only discuss the claims made under the Truth in Lending Act, as said claims are the only issues from the prior action relevant to this case.

addition, Guardian seeks its attorneys' fees and costs incurred in this action as damages.[3]

On December 20, 1996, Swartzlander filed a motion to dismiss the complaint because of a lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. In this motion, Swartzlander argues that this court lacks both federal question and diversity jurisdiction over Guardian's breach of contract claims. First, on the issue of federal question jurisdiction, Swartzlander argues that the plaintiff's breach of contract claims can be resolved solely by interpreting the contract and, thus, the claims arise solely under state law. Second, the defendant asserts that this court lacks diversity jurisdiction over the claims since the amount in controversy is less than the $50,000 required under 28 U.S.C. § 1332.[4] Therefore, Swartzlander requests that this court dismiss this action pursuant to Fed. R.Civ.P. 12(b)(1).

Guardian responded to the motion to dismiss on January 7, 1997. In its response, Guardian argues that its breach of contract claims are integrally tied to a federal question—whether Swartzlander violated the Truth in Lending Act in its contract with Bridges. The plaintiff submits that courts have consistently found federal question jurisdiction on breach of contract claims that involve the interpretation of federal law or regulations. Therefore, Guardian maintains that this court has subject matter jurisdiction over its breach of contract claims and, thus, that Swartzlander's motion to dismiss must be denied. On February 14, 1997, in South Bend, Indiana, this court heard oral argument on the defendant's motion to dismiss in open court.

## II. STANDARDS OF REVIEW UNDER RULE 12(b)(1)

The defendant has filed its motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure. There are two types of challenges to jurisdiction which may be made under Rule 12(b)(1): (1) a *facial* attack that challenges the sufficiency of the allegations of jurisdiction in the pleadings on their face; and (2) a *factual* attack that challenges the truth of the jurisdictional facts alleged in the pleadings. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.), *cert. denied*, 513 U.S. 868, 115 S.Ct. 188, 130 L.Ed.2d 121 (1994); *Freiburger v. Emery Air Charter, Inc.*, 795 F.Supp. 253 (N.D.Ill. 1992). When reviewing a motion raising a facial attack, the court must accept the well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir.1995). This standard is similar to that applied in a motion to dismiss under Rule 12(b)(6). *Brown v. Keystone Consolidated Industries, Inc.*, 680 F.Supp. 1212, 1215 (N.D.Ill.1988). Thus, a case may be dismissed on a facial challenge only if it is clear from the complaint that a federal question was raised solely for the purpose of obtaining jurisdiction or where a federal claim is insubstantial and frivolous. *Bell v. Hood*, 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946); *Peckmann v. Thompson*, 966 F.2d 295, 297 (7th Cir.1992).

However, if the challenge to jurisdiction is factual, no presumption of truthfulness applies to the plaintiff's factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. *Ritchie*, 15 F.3d at 598. The court may receive competent evidence such as affidavits, deposition testimony and the like in order to determine the factual

---

**3.** The court notes that the present cause of action could have been—and, in furtherance of the principles of judicial economy and efficiency, perhaps, should have been—brought as a cross-claim in the prior *Bridges* action since the present breach of contract claims are transactionally related to the claims raised by Bridges. However, Rule 13(g) of the Federal Rules of Civil Procedure is permissive and not mandatory. Thus, unlike Rule 13(a) on compulsory counter-claims against opposing parties, Rule 13(g) does not mandate the filing of transactionally related

claims against co-parties. Thus, the plaintiff's claims in this case have been properly presented under the Federal Rules of Civil Procedure.

**4.** The court notes that since this case was filed, Congress amended § 1332 by increasing the amount in controversy requirement to $75,000. *See* The Federal Courts Improvement Act of 1996, Pub.L. No. 104–317, Title II, § 205(a), 110 Stat. 3850.

dispute. *Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1011 n. 4, 91 L.Ed. 1209 (1947). Thus, when faced with a factual challenge, the court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. F.D.I C.,* 999 F.2d 188, 191 (7th Cir.1993).

■ In this case, the defendant asserts that this court tacks subject matter jurisdiction over the plaintiff's breach of contract claims because the claims do not arise under the Constitution, laws or treaties of the United States. Thus, in this court's view, the defendant presents a facial challenge to this court's subject matter jurisdiction. As a result, the court must accept Guardian's well-pleaded allegations in the complaint as true and draw all reasonable inferences in Guardian's favor when addressing whether the court has subject matter jurisdiction over the breach of contract claims in this case.

### III. SUBJECT MATTER JURISDICTION

■ In its motion to dismiss, Swartzlander challenges this court's subject matter jurisdiction over Guardian's breach of contract claims. Swartzlander first argues that no federal question jurisdiction exists because the breach of contract claims do not arise under the Constitution, laws or treaties of the United States. In addition, the defendant asserts that, although the parties appear to be citizens of different states, diversity jurisdiction is lacking because the amount of damages in controversy does not exceed the $50,000 requirement. Thus, Swartzlander contends that this court does not have federal subject matter jurisdiction over the claims pursuant to either 28 U.S.C. § 1331 or 28 U.S.C. § 1332.

Guardian responds by arguing that courts have consistently held that federal question jurisdiction can be established if a breach of contract claim involves the interpretation of federal law or regulations. In support of this argument, the plaintiff cites to two cases from other circuits of the United States Court of Appeals: *Mountain Fuel Supply Co. v. Johnson,* 586 F.2d 1375 (10th Cir. 1978), *cert. denied,* 441 U.S. 952, 99 S.Ct. 2182, 60 L.Ed.2d 1058 (1979), and *Katz v. Cisneros,* 16 F.3d 1204 (Fed.Cir.1994). Thus, Guardian argues that a federal question exists in this case because the breach of contract claims require this court to determine whether the Truth in Lending Act was, in fact, violated by the defendant.

Federal subject matter jurisdiction is present when: (1) the claim or claims presented rest on a question of federal law, *see* 28 U.S.C. § 1331; or (2) there exists complete diversity in the citizenship of the parties and the amount in controversy is in excess of $50,000, *see* 28 U.S.C. § 1332. In this case, the issue of diversity jurisdiction does not appear to be in conflict. Although the citizenship of the parties appears to be diverse-Guardian is a Michigan corporation with its principal place of business in Southfield, Michigan, while Swartzlander is an Indiana corporation with its principal place of business in Michigan City, Indiana, it appears that the plaintiff alleges damages in the amount of only $17,064.62, exclusive of interest and costs. Therefore, the plaintiff has failed to allege damages that exceed the amount in controversy requirement of $50,000 and, thus, this court lacks diversity jurisdiction under § 1332(a). Consequently, if federal subject matter jurisdiction is found to exist in this case, this court must determine that the plaintiff's breach of contract claims arise under federal law.

Article III of the United States Constitution gives the federal courts power to hear cases "arising under" federal statutes. *See* Art. III, § 2 (stating that "[t]he judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority ...."). However, the grant of power under Article III is not self-executing, and it was not until Congress passed the Judiciary Act of 1875 that federal courts were granted general federal question jurisdiction. *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 807, 106 S.Ct. 3229, 3231–32, 92 L.Ed.2d 650 (1986). The Judiciary Act of 1875 created 28 U.S.C. § 1331,

which provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States."

The plaintiff is the master of the lawsuit, and is free to decide what law he will rely upon—therefore, the plaintiff determines whether the case will be brought as a suit arising under federal or state law. *See Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411–12, 57 L.Ed. 716 (1913). Federal question jurisdiction can arise in a variety of situations and, certainly, the phrase "arising under" federal law masks a multitude of issues. *See Franchise Tax Board*, 463 U.S. at 8, 103 S.Ct. at 2845–46. However, the Supreme Court of the United States has also specifically declined to recognize an "automatic test" for determining when federal question jurisdiction is present. *Merrell Dow*, 478 U.S. at 814, 106 S.Ct. at 3235. The Supreme Court has held that the question whether a claim "arises under" federal law must be determined by reference to the "well-pleaded complaint." *Franchise Tax Bd. v. Construction Laborers Vacation Tr.*, 463 U.S. 1, 9–10, 103 S.Ct. 2841, 2846–47, 77 L.Ed.2d 420 (1983). In *Franchise Tax Board*, the Supreme Court found: "Congress has given the lower federal courts jurisdiction to hear, originally or by removal from a state court, only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Id.* at 27–28, 103 S.Ct. at 2856. Put another way, the "well-pleaded" complaint rule forbids a plaintiff from simply phrasing a state law claim in federal law terms. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 399, 107 S.Ct. 2425, 2429, 2433, 96 L.Ed.2d 318 (1987). Thus, Guardian's well-pleaded complaint must reveal a federal question in order to justify a finding that subject matter jurisdiction exists in this case.

■ In its complaint, Guardian has phrased its challenges as breach of contract claims. Ordinarily, breach of contract claims arise under state law. However, under the well-pleaded complaint rule, courts ordinarily look to the legal *substance* of the plaintiff's claims rather than the value of the interests implicated when determining whether a federal question exists. *See, e.g., Maroney v. University Interscholastic League*, 764 F.2d 403, 405 (5th Cir.1985). Thus, causes of action created by state law may give rise to federal jurisdiction when the claims created by state law necessarily turn on some construction of federal law. *Franchise Tax Bd.*, 463 U.S. at 9, 103 S.Ct. at 2846.

As the Supreme Court explained in *Franchise Tax Board*, "[e]ven though state law creates [the plaintiff's] causes of action, its case might still 'arise under' the laws of the United States if a well-pleaded complaint establishe[s] that its right to relief under state law requires *resolution of a substantial question of federal law in dispute between the parties.*" *Id.* at 13, 103 S.Ct. at 2848 (emphasis supplied). In this case, it appears that Guardian acknowledges the fact that federal law does not create its breach of contract causes of action. Instead, the plaintiff argues that federal subject matter jurisdiction exists because the breach of contract claims are integrally tied to a federal question. Since the plaintiff appears to concede that its causes of action arise under state law, federal jurisdiction will lie only if the determination of the merit of the breach of contract claims also requires the resolution of a substantial question of federal law.

■ The Supreme Court has held that a plaintiff's right to relief presents a substantial question of federal law if the claim is "such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another." *Gully v. First Nat'l Bank*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936). Thus, this court must look to state law to determine what the plaintiff must prove on its breach of contract claims to determine whether said claims involve a substantial question of federal law.[5]

---

5. The court finds that Indiana law is the proper choice of law in this case, since the circumstances behind the creation of the Assignment Agreement-the sale of the automobile to Bridges—took place at Swartzlander's principal place of business in Michigan City, Indiana.

Under the law of the State of Indiana, the essential elements of a breach of contract action are: (1) the existence of a contract, (2) the defendant's breach thereof, and (3) damages. *Shumate v. Lycan*, 675 N.E.2d 749, 753 (Ind.Ct.App.1997). In this case, it appears clear from the face of the complaint that a contract—the Assignment Agreement—was entered into by Guardian and Swartzlander. Thus, the only question is whether the Assignment Agreement was indeed breached, causing damages to Guardian. Guardian alleges that Swartzlander breached the Assignment Agreement by violating the Truth in Lending Act in its dealings with Bridges. By allegedly violating the Truth in Lending Act, Guardian submits that Swartzlander breached one of the agreed upon warranties in the Assignment Agreement.

It cannot be disputed that the Truth in Lending Act arises under federal law, or that its interpretation is governed by federal law. *See* 15 U.S.C. § 1601 *et seq.* Thus, because the plaintiff must establish that Swartzlander violated its duties under the Truth in Lending Act to prove that Swartzlander breached the Assignment Agreement, reliance on federal law is essential to the success of Guardian's breach of contract claim. *See Katz v. Cisneros*, 16 F.3d at 1207 (holding that even where case is contractual, presence of issues which require interpretation of federal law and regulation necessarily give rise to federal questions sufficient to invoke jurisdiction under § 1331).[6] Accordingly, the court now finds that Guardian's breach of contract claims present a substantial question of federal law under the Truth in Lending Act. Thus, applying the Supreme Court's holding in *Franchise Tax Board*, this court now holds that Guardian's claims "arise under" federal law. As a result, this court has subject matter jurisdiction over the plaintiff's

breach of contract claims under 28 U.S.C. § 1331.

## IV. CONCLUSION

For the foregoing reasons, this court finds that the plaintiff's breach of contract claims, pled under state law, present sufficiently substantial questions of federal law to support federal subject matter jurisdiction under 28 U.S.C. § 1331. Accordingly, the court now **DENIES** defendant Swartzlander's motion to dismiss the complaint because of a lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

---

6. Several other federal district courts have found state law-based breach of contract claims to arise under federal law because they presented substantial questions of federal law. *See, e.g., Amoco Chemical Co. v. Tex Tin Corp.*, 902 F.Supp. 730, 734 (S.D.Tex.1995) (holding that federal question jurisdiction existed over breach of contract claim because plaintiffs could not show duty of reimbursement arose under contract without proving expenditures were made pursuant to CERCLA, 42 U.S.C. §§ 9601–75); *Rustevader Corp. v. Cowatch*, 842 F.Supp. 171, 174 (W.D.Pa.1993) (finding that although plaintiff's breach of contract claims were not created under federal law, well-pleaded complaint necessarily depended on resolution of substantial federal question under federal patent law).