**Debra KIDD, Plaintiff–Appellant,**

**v.**

**SOUTHWEST AIRLINES, CO.,**
**Defendant–Appellee.**

**No. 88–1920.**

United States Court of Appeals,
Fifth Circuit.

Jan. 4, 1990.

Marvin Menaker, Menaker & Huffman, Dallas, Tex., for plaintiff-appellant.

J. Joe Harris, Matthews & Branscomb, San Antonio, Tex., for defendant-appellee.

Before GEE, and JONES, Circuit Judges, and HUNTER[1], District Judge.

EDITH H. JONES, Circuit Judge:

Debra Kidd appeals from the district court's summary judgment order which dismissed her wrongful discharge claim against Southwest Airlines. Kidd originally filed suit in Texas state court, alleging breach of her employment contract and wrongful discharge. Southwest Airlines removed the cause to federal district court, where the judge granted Southwest Airlines' summary judgment motion. Although the issue of federal jurisdiction was not plumbed by the parties as thoroughly as we might have hoped, we conclude that the district court did have subject matter jurisdiction to adjudicate this action. On the merits, we affirm the summary judgment.

## I.

## BACKGROUND

For over eight years, plaintiff Debra Kidd worked as a customer service agent, and subsequently as a customer service supervisor for defendant Southwest Airlines Company ("Southwest"). As a customer service supervisor, Kidd fell outside of the employee bargaining unit and was not covered by the Collective Bargaining Agreement ("CBA") between Southwest and the International Association of Machinists and Aerospace Workers, AFL–CIO. Instead, Southwest entered into an independent employment relationship with each of its supervisory employees, including Kidd.

Although Kidd was not a direct party to the CBA, she asserts that "it was common knowledge among employees and supervisors" that supervisors were governed by and were third party beneficiaries to certain of the agreement's provisions. Southwest concedes that it uniformly applied CBA terms covering shift trades, group insurance, profit sharing, free day bids, sick pay, and overtime to union and non-union employees. Further, Southwest maintained a salary differential between supervisory and union employees of $150 per month, so that when union employees received a raise, supervisory employees benefitted. Kidd also contends, over the company's vigorous denial, that it extended the CBA's termination and arbitration provisions to cover supervisory employees. The parties did not execute a written contract mentioning any of these incorporated provisions.

On September 26, 1986, Southwest discharged Debra Kidd without prior warning or an opportunity for arbitration.

Kidd filed suit in Texas state court, alleging that Southwest violated the terms of her employment agreement by arbitrarily firing her, refusing to reinstate her, and denying her request to arbitrate her claims.

---

1. District Judge of the Western District of Louisiana, sitting by designation.

Pursuant to 28 U.S.C. § 1441(a), Southwest Airlines removed the cause to federal district court, asserting federal question jurisdiction, 28 U.S.C. § 1331.

Kidd moved for remand on the ground that, as a supervisor, she was not covered by the CBA or the Railway Labor Act, 45 U.S.C. § 151 *et seq.* (1986) ("RLA"), which governs collective bargaining in the transportation industry. The district court denied this motion.

Kidd then amended her complaint to assert breaches of Southwest's employee stock ownership plan and employee profit-sharing plan, which are ERISA-qualified. Her amendment thus explicitly raised federal issues for the district court's resolution. 29 U.S.C. §§ 1001–1461. After some discovery, the district court granted summary judgment for Southwest on the ground that Kidd failed to raise a genuine issue of material fact concerning whether Southwest had modified Texas' "at-will" employment doctrine by applying the CBA's termination provisions to Kidd's individual employment relationship. Later, the court tried and ruled against Kidd on the ERISA claims. Kidd has appealed the summary judgment, but she does not seek review of the ERISA judgment.

## II.

### REMOVAL JURISDICTION

The parties' jurisdictional arguments are framed solely around the question whether Kidd's complaint arose under federal law for purposes of removal jurisdiction. The propriety of removal from state to federal court is indeed one aspect of the question, but another critical aspect is what happened in this case after removal, when plaintiff amended her complaint to include causes of action founded on ERISA. We address each aspect of the jurisdictional question in turn.

The propriety of removal by Southwest depended upon whether Kidd's case fell within the United States district court's original "federal question" jurisdiction. *Franchise Tax Board v. Const. Laborers Vacation Trust,* 463 U.S. 1, 8, 103 S.Ct.

2841, 2845, 77 L.Ed.2d 420 (1983). Section 1331 provides that "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case "arises under" federal law when the vindication of a right under state law necessarily turns upon some construction of federal law, *Franchise Tax Board,* 103 S.Ct. at 2846; *Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921), or when the plaintiff must establish both the correctness and applicability to his case of a federal law proposition, in order to secure the relief sought, *Franchise Tax Board,* 103 S.Ct. at 2846. Despite these concise statements, the Supreme Court has stressed that no one formulation of the "arising under" definition captures all of the nuances involved in determining which cases fall within the federal court's original jurisdiction. *Merrill Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 106 S.Ct. 3229, 3232, 92 L.Ed.2d 650; *Franchise Tax Board,* 103 S.Ct. at 2846. *See Willy,* 855 F.2d 1160, 1165 (5th Cir.1988).

The "well-pleaded complaint" rule has become indispensable to implementing the federal question statute. As the Supreme Court explained in *Taylor v. Anderson,* 234 U.S. 74, 75–76, 34 S.Ct. 724, 725, 58 L.Ed. 1218 (1914):

> Whether a case is one arising under [federal law] ... must be determined from what necessarily appears in the plaintiff's statement of his own claim ..., unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose.

*See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987); *Merrill Dow,* 106 S.Ct. at 3232; *Louisville & Nashville Railway Company v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908); 13b Wright & Miller § 3566 (2d ed. 1984). In cases that have been removed to federal court, the plaintiff's complaint rather than the removal petition must establish federal jurisdiction. *Merrill Dow,* 106 S.Ct. at 3232; *Franchise Tax Board,* 103 S.Ct. at 2846–

47. When the plaintiff moves to remand for lack of jurisdiction, the burden of establishing original federal jurisdiction rests upon the defendant. *Pullman Co. v. Jenkins,* 305 U.S. 534, 540, 59 S.Ct. 347, 350, 83 L.Ed. 334 (1939); *Willy v. Coastal Corp.,* 855 F.2d at 1164.

Debra Kidd's original complaint alleged causes of action for breach of contract and the tort of wrongful discharge under Texas law. The material portions of her complaint state:

V.

Defendant has in effect now and at all material times during Plaintiffs' employment, an employment agreement between itself and the International Association of Machinists and Aerospace Workers. Plaintiffs are not direct parties to said agreement, but were governed by same and are third party beneficiaries of many of its provisions. Plaintiffs and Defendant both had express and implied understanding that Plaintiffs' jobs were governed by the terms of that agreement.

VI.

Plaintiffs' discharge was not for "just cause" and was capricious, arbitrary, wrongful, malicious and in violation of said agreement, thereby directly and proximately causing damages to Plaintiffs through their respective loss of wages and other employment benefits from date of discharge, in an amount in excess of the minimum jurisdiction of this Court.

█ In its petition for removal, Southwest alleged that by making reference to the CBA as some part of her employment agreement, Kidd raised a federal question pertinent to her claims. Since Southwest is "a common carrier by air engaged in interstate commerce", and since the CBA utilized by Kidd in her complaint covers "rates of pay, rules or working conditions", Southwest contends that the Railway Labor Act, 45 U.S.C. §§ 151–188 ("RLA"), is essential to Kidd's cause of action. The Supreme Court has recognized that collective bargaining agreements made pursuant to the RLA are federal contracts, governed by federal law in federal courts. *Atchison, Topeka, and Santa Fe Railway Co. v. Buell,* 480 U.S. 557, 107 S.Ct. 1410, 1416, 94 L.Ed.2d 563 (1987); *Andrews v. Louisville & Nashville Railroad Co.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972). In order to interpret the RLA, the Supreme Court has drawn analogies to cases construing general labor provisions under § 301 of the Labor Management Relations Act. 29 U.S.C. § 185. *See International Association of Machinists v. Central Airlines,* 372 U.S. 682, 691, 83 S.Ct. 956, 961, 10 L.Ed.2d 67 (1963), 83 S.Ct. at 961.[2]

Kidd freely acknowledges that the CBA between Southwest and the union does not cover her. Instead, Kidd has asked the court to interpret an *individual* employment agreement between herself and Southwest, some elements of which mirror the CBA between Southwest and its union. Not all individual agreements between an airline and an employee raise a federal question under the RLA. *Forsythe v. Saudi Arabian Airlines Corp.,* 885 F.2d 285 (5th Cir.1989); *Brown v. American Airlines, Inc.,* 593 F.2d 652, 655 (5th Cir.1979). *See Andrews,* 92 S.Ct. at 1563; *Grayson v. American Airlines, Inc.,* 864 F.2d 712 (10th Cir.1989) (Oklahoma law); *Buethe v. Britt Airlines, Inc.,* 787 F.2d 1194 (7th Cir.1986) (Indiana law). This court must ascertain whether Kidd's allegations that certain aspects of her independent employment relationship mirror provisions of the CBA demonstrate a sufficiently close nex-

2. Southwest does *not* contend that even if Kidd's well-pleaded complaint failed to state a claim arising under federal law, it would nevertheless be removable by the "powerful preemptive force" of the RLA, analogous to that of § 301 of the Labor Management Relations Act. *See Avco Corp. v. Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). A claim of § 301 preemption constitutes a narrow exception to the well-pleaded complaint rule. *See* discussions in *Willy, supra. See also Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (state tort, contract claims completely preempted by ERISA provisions). Because Kidd was not a party to an RLA contract, such a claim would have been patently meritless.

us between her agreement and the CBA to generate a federal question under the RLA.

The Supreme Court has held that where the plaintiff states a cause of action under state law, if "the heart of the complaint [is] a ... clause in the collective bargaining agreement," then the complaint arises under federal law. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 107 S.Ct 2425, 2430, 96 L.Ed.2d 318 (1987); *Avco Corp. v. Machinists*, 390 U.S. 557, 558, 88 S.Ct. 1235, 1236, 20 L.Ed.2d 126 (1968). The CBA will be central to the state law complaint if the complaint is founded directly upon rights created under the collective bargaining agreement, or if the complaint depends "substantially" upon analysis of the CBA. *Caterpillar Inc.*, 107 S.Ct. at 2431; *International Brotherhood of Electrical Workers v. Hechler*, 481 U.S. 851, 107 S.Ct. 2161, 2165–66, 95 L.Ed.2d 791 (1987).

Several Supreme Court cases have fleshed out this "substantiality" standard. In *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 221, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985) a case alleging a bad-faith failure to honor the medical disability provision of the CBA, the Court concluded that, when state-law rights were inextricably intertwined with interpretation of the CBA's provisions, federal law must govern the dispute. *Id.* 105 S.Ct. at 1911–12. *See Hechler*, 107 S.Ct. at 2168 (Tort liability under Florida law depends upon the duties assumed by the parties under the contract). Although *Allis–Chalmers* recognized that some labor suits characterized under state law could raise federal questions for removal purposes,[3] the Court's limitation on its holding is useful here:

> [N]ot every dispute concerning employment or tangentially involving a provision of a collective bargaining agreement, is preempted by ... provisions of the federal labor law.

*Allis–Chalmers*, 105 S.Ct. at 1911. This statement reflects the earlier position adopted by the Court in *Franchise Tax Board*, 103 S.Ct. at 2854, n. 28:

> [E]ven under § 301 [of the Labor Management Relations Act] we have never intimated that any action merely relating to a contract within the coverage of § 301 arises exclusively under that section. For instance, a state battery suit growing out of a violent strike would not arise under § 301 simply because the strike may have been a violation of an employer-union contract.

More recently, the Court held that federal labor law did not govern a state law action by a member of the collective bargaining unit for retaliatory discharge:

> [T]he state law action in this case is "independent" of the collective-bargaining agreement in the sense of "independent" that matters for § 301 preemption purposes: resolution of the state-law claim does not require construing the collective bargaining agreement.

*Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, at 1882, 100 L.Ed.2d 410 (1988).

Finally, although a plaintiff is a member of the collective bargaining unit, he may assert legal rights independent of the CBA under state law, so long as those rights do not derive from provisions of a CBA. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 2431, 96 L.Ed.2d 318 (1987). Hence, even if the plaintiff could have asserted federal rights, a plaintiff may elect a state court forum for his claim by pleading only state-law causes of action. *Id.* 107 S.Ct. at 2433. *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913) (plaintiff is master of his complaint). The Court will not permit the defendant to transform a state-law action into a federal claim merely by rephrasing the claim in terms of federal law. *Id.* 107 S.Ct. at 2433.

Alternatively, where a union representative negotiates a CBA, interpretation of that agreement raises a federal question,

---

**3.** Both *Allis–Chalmers* and *Lingle* concern federal labor law preemption. However, their reasoning applies directly to federal question jurisdiction, since every case presenting an issue cognizable under § 301 of the Labor Management Relations Act necessarily raises a federal question. *Avco Corp.*, 88 S.Ct. at 1235. *See* note 2 *supra*.

even if the bargaining unit contains only one member. *General Teamsters Union Local No. 174 v. Trick & Murray, Inc.,* 828 F.2d. 1418, 1420 (9th Cir.1987). Overriding federal policies favoring uniform interpretive standards, and seeking to prevent ruinous strikes, require federal courts to enforce agreements between management and union employees. The same policies do not bear upon individual employment agreements.

Based upon the foregoing standards, the resolution of Kidd's claim does not depend substantially upon interpretation of the collective bargaining agreement. Southwest entered into independent employment relationships with each of its supervisory employees. Kidd was not a member of the bargaining unit. Had Kidd's personal agreement specifically included the express language used in the collective bargaining agreement, Southwest could not have claimed that enforcement of the contract required construction of the CBA.

Instead, Southwest administered Kidd's independent agreement consistently with the collective bargaining agreement, in order to achieve some uniformity between the sick pay, vacation and other benefits received by employees. When the union negotiated a new CBA, Southwest could alter its mode of administration without also rewriting supervisory agreements. However, this piecemeal application of the CBA to Kidd's relationship does not convert a relationship founded upon state law into one based upon the collective bargaining agreement. The incorporation of some collective bargaining standards into an otherwise independent agreement does not alter the nature of the underlying agreement. Federal question jurisdiction does not exist on this ground. *See Chicago District Council of Carpenters v. Strom,* 634 F.Supp. 163, 168 (N.D.Ill.1986) (where a general contractor orally agreed to satisfy the wage and fringe benefit obligations

enumerated in the CBA between a sub-contractor and the sub-contractor's employees, the incorporation of these provisions against the general contractor did not subject the general contractor to federal jurisdiction). *See also Carpenters Southern California Administrative Corp. ("CSCAC") v. Majestic Housing,* 743 F.2d. 1341, 1344–45 (9th Cir.1984). Where an employee asserts rights under an individual employment contract, that employee does not fall within the dictates of Federal labor law. *Derrico v. Sheehan Emergency Hospital,* 844 F.2d. 22, 26 (2d Cir.1988).

Second, resolution of Kidd's dispute does not inextricably rely upon interpretation of the incorporated collective bargaining terms as they bear on the CBA. When the court interprets a CBA, it looks to the course of dealings between the parties, prior contracts, and the relationship between the employer and the union. None of these facts concern Kidd. In this case, the court must interpret the terms which mirror the collective bargaining agreement in light of the other elements in Kidd's agreement.

Third, because Kidd is not a union member, federal law governing collective bargaining relationships between unions and management is inapplicable. *Compare Caterpillar,* 107 S.Ct. at 2425. The strong federal policy in assuring stability and predictability in disputes where union members assert rights that may hinge on a CBA[4] simply does not apply. Thus, the face of Kidd's well-placed complaint in Texas state court does not allege a claim arising under federal labor laws. The district court did not have federal question jurisdiction upon removal from state court.

## III.

## JURISDICTION OVER THE AMENDED COMPLAINT

Even though federal subject matter jurisdiction did not exist over Kidd's original

---

**4.** A collective bargaining agreement subject to federal construction controls all aspects of the parties' employment relationship. *Transportation–Communication Employees Union v. Union Pacific Railroad Co.,* 385 U.S. 157, 87 S.Ct. 369, 371, 17 L.Ed.2d 264 (1966). "The interests in interpretive uniformity and predictability", as well as broad federal labor policy, necessitate

that the evolving federal common-law define the relationships created by the collective bargaining agreement. *Allis–Chalmers,* 105 S.Ct. at 1911. Particularly under the RLA, Congress has expressed a desire to apply uniform labor policies to carrier industries. *Union Pacific Railroad Co. v. Sheehan,* 439 U.S. 89, 99 S.Ct. 399, 402, 58 L.Ed.2d 354.

complaint, Kidd's amended complaint, filed after removal, confers federal question jurisdiction on the district court by stating a claim under the Employee Retirement Income Security Act of 1977, 29 U.S.C. §§ 1001–1461 ("ERISA"). While neither party argued that the amended complaint provided an adequate basis for federal question jurisdiction, federal courts must address jurisdictional questions *sua sponte* when the parties' briefs do not bring the issue to the court's attention. *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541–42, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986); *Feigler v. Tidex Inc.*, 826 F.2d 1435, 1437 (5th Cir.1987); *Giannakos v. M/V BRAVO TRADER*, 762 F.2d 1295, 1297 (5th Cir.1985).

■ In most cases, federal courts base decisions about subject matter jurisdiction after removal on the plaintiff's complaint as it existed at the time that the defendant filed the removal petition. *Lockwood Corp. v. Black*, 669 F.2d 324, 326 (5th Cir.1982); *In re Carter*, 618 F.2d 1093, 1101 (5th Cir.1980). An appellate court reviewing the district court's ruling should determine only whether the defendant properly removed the claim in the first instance. *Grubbs v. General Electric Credit Corp.*, 405 U.S. 699, 702, 92 S.Ct. 1344, 1347, 31 L.Ed.2d 612 (1972). Using this procedure, the district court in Kidd's case would lack jurisdiction, since Kidd's original complaint did not raise a federal question.

However, an alternative standard governs those situations where, after improper removal, a case is tried on the merits without objection, and the federal court enters judgment. *Grubbs*, 405 U.S. 699, 702, 92 S.Ct. 1344, 1347, 31 L.Ed.2d 612 (1972). The jurisdictional issue on appeal becomes whether the federal district court would have had jurisdiction over the case had it originally been filed in federal court. *Grubbs*, 92 S.Ct. at 1347. The appellate court must review the pleadings as they exist at the time that the district court enters judgment, particularly since federal procedural rules permit the plaintiff to amend the pleadings to cure jurisdictional defects. *Smith v. City of Picayune*, 795 F.2d 482, 485 (5th Cir.1986); *McKenzie v. United States*, 678 F.2d 571, 574 (5th Cir. 1982) (viewing the case after consolidation with another claim); *Miller v. Stanmore*, 636 F.2d 986, 990 (5th Cir.1981). In Kidd's case, when the district court entered summary judgment, Kidd had already amended her complaint to include the ERISA cause of action. Hence, if this alternative procedure applies, the district court would have had jurisdiction over Kidd's claims.

■ This second procedure governs Kidd's action, because Kidd satisfies the three prongs of the *Grubbs* standard. As indicated above, Southwest improperly removed the original petition from Texas court. Further, Kidd received a trial on the merits for both of her claims. The "trial on the merits" requirement comprehends a full bench or jury trial, as well as a summary judgment dismissal. *Farina v. Mission Investment Trust*, 615 F.2d 1068, 1074 & n. 16 (5th Cir.1980). The district court disposed of Kidd's wrongful discharge claim by issuing a summary judgment order and a comprehensive memorandum opinion. On the ERISA claim, the court entered judgment for Southwest after a bench trial.

The third *Grubbs* requirement asks whether or not the party who contests the district court's jurisdiction on appeal voiced those objections before the district court resolved the claims. Where the disgruntled party takes full advantage of the federal forum and then objects to removal only after losing at the district court level, that party has waived all objections to removal jurisdiction. *Lirette v. N.L. Sperry Sun, Inc.*, 820 F.2d 116, 117 (5th Cir.1987) (en banc). *See O'Halloran v. University of Washington*, 856 F.2d 1375, 1380 (9th Cir.1988); *Brough v. United Steelworkers of America*, 437 F.2d 748, 750 (1st Cir. 1971).[5]

Although Kidd initially protested the district court's removal jurisdiction, we find

---

5. This principle does not imply that, by consenting to removal jurisdiction, the litigant has waived the right to challenge all jurisdictional defects. *See Giannakos*, 762 F.2d. at 1297. Instead, it requires the reviewing court to assess jurisdictional challenges according to the com-

that Kidd's voluntary decision to amend her complaint after the district court denied her motion for remand waived this objection. The Seventh Circuit addressed a similar problem in *Bernstein v. Lind–Waldock & Co.*, 738 F.2d. 179, 185 (7th Cir.1984). Bernstein filed suit in Illinois state court under state-law suretyship principles to regain a trading seat upon which the Chicago Mercantile Exchange foreclosed. The Exchange removed the case to federal court, where the judge denied Bernstein's motion to remand. Bernstein then amended his complaint to allege a due process cause of action. Bernstein appealed an adverse summary judgment and renewed his jurisdictional objection.

The Seventh Circuit found that, although Bernstein's initial complaint was not removable, Bernstein's decision to "throw in the towel" and amend his complaint to state an "unmistakable federal cause of action" conferred original jurisdiction on the federal court. *Id.* at 185. Judge Posner reasoned:

> If [Bernstein] was convinced that the original action was not removable, he could have stuck by his guns and we would have vindicated his position on appeal. But once he decided to take advantage of his involuntary presence in federal court to add a federal claim to his complaint, he was bound to remain there. Otherwise, he would be in a position where if he won his case on the merits in federal court, he could claim to have raised the federal question in his amended complaint voluntarily, and if he lost he could claim to have raised it involuntarily and to be entitled to start over in state court.

*Id.* Thus, where, after objecting to removal, the plaintiff voluntarily amends the original complaint to allege a federal cause of action, the plaintiff will have waived the ability to challenge removal jurisdiction. *See Illinois v. Archer Daniels Midland,* 704 F.2d. 935, 939 (7th Cir.1983); *Brough,* 437 F.2d. at 750. *Compare O'Halloran,* 856 F.2d. at 1380 (where the court requires plaintiff to amend complaint, objections to

removal jurisdiction are preserved). *But see Kelly v. Carr,* 691 F.2d. 800, 805 (6th Cir.1980) (amendment does not cure defects in removal jurisdiction). We are persuaded that under *Grubbs* and *Bernstein,* the district court rendered judgment after it acquired jurisdiction by virtue of Kidd's amended ERISA claim.

## IV.

## SUMMARY JUDGMENT

■ As her second contention, Kidd argues that the district court improperly granted Southwest's summary judgment motion on the wrongful discharge claims. Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." As interpreted by the Supreme Court, this standard mandates the entry of summary judgment:

> after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and upon which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 318, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Kidd failed to demonstrate that Southwest had either expressly or implicitly incorporated the CBA's termination or arbitration provisions into Kidd's individual employment contract. In Texas, an employer who hires an employee for an indefinite period may terminate that employee at-will and without cause, unless the employer enacts specific policies or procedures regarding employee discharge. *See Sabine Pilot Service, Inc.,* 687 S.W.2d 733, 734 (Tex.1985); *East Line & R.R.R. Co. v. Scott,* 72 Tex. 70, 10 S.W. 99, 102 (1888). *See also McClendon v. Ingersoll–Rand Co.,* 779 S.W.2d 69 (Tex.1989) (exception to

plaint as it existed at the time of judgment, rather than at the time of removal. *See Smith*

*v. City of Picayune,* 795 F.2d at 485.

employment-at-will doctrine when termination allows employer to avoid pension obligations).

Kidd contends that Southwest Airlines applied the CBA's discharge provisions against individual employees, modifying the at-will contract. She did not present any evidence on the record to support this contention. Kidd's independent employment agreement with Southwest Airlines did not contain express discharge procedures. Southwest did not distribute a general employee handbook or other documentation to indicate that the airline intended to apply the CBA's discharge procedures to its supervisory employees. *Compare Aiello*, 818 F.2d. 1196, 1198 (5th Cir.1987).

Kidd does contend that "it was common knowledge among employees and supervisors" that the CBA's discharge provisions governed her contract. Nevertheless, Kidd's own deposition and the deposition of her co-plaintiff, Catherine Duffy, refute this contention. When Southwest's attorney asked Ms. Kidd what the phrase "you're not covered by the CBA, but you're governed by it" meant, Ms. Kidd replied:

It meant that most everything in the contract applied to me. Those were the rules and regulations we went by. There were, of course, some things that couldn't apply, but the things that did apply were in the contract....

Q: Did any company supervisor ever tell you that as a supervisor you had the right to invoke the arbitration procedure under the union contract?

A: No

....

Q: So you're relying on the fact that the contract provides for arbitration. And my question to you is what are you relying upon to reach the conclusion that Debra Kidd is entitled to arbitration?

A: The contract.

Q: The contract itself?

A: Yes.

A similar colloquy occurred when Southwest's attorney deposed Catherine Duffy:

Q: And when you say that you were told that you were governed by the contract but not covered, what did that mean to you?

A: In my understanding, it meant that we were governed by the same rules, the same rules that applied to the ticket agents applied to us also, but that we were not covered by the contract should anything ever result of this. For instance-well, if terminated.

Q: Did any company representative ever tell you that as a supervisor you had the right to invoke the arbitration procedure under the union contract?

A: No.

Kidd presented no evidence to support her assertion that the implied application of the discharge procedures was common knowledge.

When confronted by a summary judgment motion, the non-moving party must go beyond the pleadings to "designate specific facts showing that there is a genuine issue for trial." *Celotex*, 106 S.Ct. at 2553. Debra Kidd failed to satisfy this burden, because she presented no affirmative evidence that Southwest expressly or implicitly incorporated the CBA's discharge provisions into her individual contract. Consequently, we affirm the district court's order granting summary judgment on the wrongful discharge claim.

AFFIRMED.