**Eddie VIRGIL, Plaintiff,**

v.

**REORGANIZED M.W. CO., INC., Montgomery Ward Credit Corp., Monogram Credit Card Bank of Ga., Northland Credit Group, Inc., and Equifax, Defendants.**

**No. Civ.A. 3:00CV977BN.**

United States District Court,
S.D. Mississippi,
Jackson Division.

June 22, 2001.

Kathryn N. Nester, Kathryn N. Nester, Attorney, Jackson, MS, for Eddie Virgil, plaintiff.

Ross F. Bass, Jr., Amanda K. Jones, Phelps Dunbar, Jackson, MS, for Reorganized M.W. & Co., Inc., Montgomery Ward Credit Corporation, Monogram Credit Card Bank of Georgia, defendants.

## OPINION AND ORDER

BARBOUR, District Judge.

This cause comes before the Court on Plaintiff's Motion to Remand. After considering the motion, the Joint Response of the defendants, and the plaintiff's Rebuttal, the Court finds that the motion to remand is well taken and should therefore be granted.

### I. Facts and Proceedings

Plaintiff Eddie Virgil ("Virgil") sought to sue the Reorganized M.W. Co., Inc., the Montgomery Ward Credit Corporation, the Monogram Credit Card Bank of Georgia, the Northland Group, Inc., and Equifax ("the Defendants") in the circuit court of Copiah County, Mississippi. Virgil alleged that he was wrongly reported as having a delinquent credit account by defendant Montgomery Ward, which resulted in collection efforts and a bad credit report, and that repeated efforts to notify the Defendants of their error were in vain. In the complaint that Virgil filed with the circuit court, he asserted that the Defendants' "continuous and ongoing false reports of a debt and attempts to collect the debt ... constitute a wanton and reckless disregard" of his rights, and that their "negligent and/or grossly negligent acts include but are not limited to ... [n]egligent infliction of emotional distress," among other acts. Virgil sought judgment "in the amount of $74,000.00 in compensatory and punitive damages, and for costs, pre-judgment interest and attorney fees."

After Virgil filed the complaint on November 10, 2000, the Defendants jointly moved for removal to this Court on December 26, 2000. The Defendants claimed that removal on diversity grounds was proper under 28 U.S.C. §§ 1332(a), 1441(a)

and (b), and 1367, since (1) Virgil's allegation of punitive damages meant that attorney fees greater than $1,001.00 were likely to be awarded if he prevailed in court and (2) Virgil is a Mississippi resident while the Defendants are all nonresident corporations. The Defendants also claimed that federal question jurisdiction was satisfied by the preemptive effect of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA").

On January 25, Virgil filed the Motion to Remand which is now before this Court, denying that either the amount in controversy or the FDCPA create federal subject-matter jurisdiction in this case and asking this Court to remand to the Copiah County circuit court.

## II. Analysis

Virgil's Motion to Remand is opposed by the Defendants on two grounds, diversity jurisdiction and federal question jurisdiction. Because Defendants invoked federal jurisdiction in seeking removal to federal court, theirs is the burden of demonstrating subject matter jurisdiction. *Kidd v. Southwest Airlines,* 891 F.2d 540, 543 (5th Cir.1990); *Roberson v. Jim Walter Homes,* No. CIV.A.100CV108–D–D, 2000 WL 798826, at *1 (N.D.Miss. June 2, 2000) (citing *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1335 (5th Cir.1995)).

### A. Diversity Jurisdiction

■ Virgil argues that because he asked in his complaint for a judgment "in the amount of $74,000.00 in compensatory and punitive damages, and for costs, pre-judgment interest and attorney fees," the amount in controversy clearly fails to meet the statutory amount set by 28 U.S.C. § 1332(a).

Against this, the Defendants assert that Virgil's inclusion of punitive damages in his prayer for relief renders possible an award for attorney fees, which Virgil did in fact request, and that the amount of those fees can be included when calculating the actual amount in controversy. *See Foret v. Southern Farm Bureau Life Ins. Co.,* 918 F.2d 534, 537 (5th Cir.1990) (attorney fees clearly part of jurisdictional amount when provided for by contract or state statute); *Aetna Cas. & Sur. Co. v. Steele,* 373 So.2d 797, 801 (Miss.1979) (punitive damages merit award of attorney fees).

■ Generally, the plaintiff is free to sue for less than the amount that 28 U.S.C. § 1332 sets as the minimum for a federal diversity claim and thus remain "master of his complaint." *Allen,* 63 F.3d at 1335.

■ The United States Court of Appeals for the Fifth Circuit has held that the defendant seeking removal must

> show by a preponderance of the evidence that the amount in controversy is greater than the jurisdictional amount. The preponderance burden forces the defendant to do more than point to a state law that might allow the plaintiff to recover more than what is pled. The defendant must produce evidence that the actual amount in controversy exceeds [the jurisdictional amount].

*De Aguilar v. Boeing Co. (De Aguilar II),* 47 F.3d 1404, 1412 (5th Cir.1995) (footnote omitted). If the defendant meets this burden, then the burden shifts to the plaintiff, who must show to a "legal certainty" that he will not be able to recover more than his complaint states. *De Aguilar II,* 47 F.3d at 1411.

In a slip-and-fall case, the United States District Court for the Northern District of Mississippi considered a plaintiff's motion to remand where the plaintiff sought "$74,-000.00[,] prejudgment interest, attorneys' fees and all costs accruing in the action."

*Scott v. Kroger Co.,* 982 F.Supp. 419, 421 (N.D.Miss.1997). As in the present case, the defendant argued that the attorney fees would surely total more than $1,001.00, so that diversity jurisdiction was proper; the plaintiff then declared in her motion to remand that $74,000.00 was the maximum she would seek. One reason for the court's rejecting the defendant's argument was that punitive damages are not available for simple negligence, *Scott,* 982 F.Supp. at 422 & n. 4, and that reason does not apply to the present case. The court also observed that, while the plaintiff's original complaint is the basis on which removal jurisdiction must be determined and cannot be amended to defeat removal, the later motions of the plaintiff may be used to clarify, not amend, an ambiguous or uncertain jurisdictional amount. *Id.* at 421–22 (citing *De Aguilar II,* 47 F.3d at 1406).

■ Ambiguity in the pleadings should be resolved in favor of state jurisdiction. *Greer v. MAJR Fin. Corp.,* 105 F.Supp.2d 583, 591 n. 6 (S.D.Miss.2000) (Lee, J.).

■ Mississippi courts are not permitted to enter final judgment for monetary amounts exceeding those demanded in the pleadings or amended pleadings. *Miss. R.Civ.P.* 54(c). However, as this Court has noted previously, the amount sought may be amended at any time before the jury is presented with the case. *Draper v. United States Fid. & Guar. Co.,* No. 3:00CV70BN, 2000 WL 268565, at *3 n. 1 (S.D.Miss. Mar.8, 2000) (Barbour, J.).

Virgil asserts in support of his Motion to Remand that the requested $74,000.00 in damages "is inclusive of attorney fees." While the original complaint could have been read to construe Virgil as seeking (1) $74,000.00 in compensatory and punitive damages *plus* (2) costs, interest, and attorney fees, this reading depends on how one construes the apparently simple yet potentially ambiguous conjunction "and."[1] An alternative reading would be to construe the list beginning with "compensatory and punitive damages" as enumerating the elements comprised in the $74,000.00 total, and this reading is the one argued by Virgil in his briefs. The court in *Scott* read a similar pleading to include attorney fees in the total damages sought. Given the admitted though slight ambiguity of the complaint, this Court finds it appropriate to accept Virgil's clarification of the amount in controversy. The bare prospect that a court *might* award attorney fees in addition to, rather than as part of, punitive damages, does not rise to a preponderance of the evidence. Nor does the mere possibility that Virgil might later amend his pleading satisfy the evidentiary standard set by the Fifth Circuit. Any concerns the Defendants might have on this score would best be addressed by the procedure recommended by this Court, namely, a request for admission by the Defendants. *Draper,* 2000 WL 268565, at *3 (citing *McLain v. American Int'l Recovery, Inc.,* 1 F.Supp.2d 628, 631 (S.D.Miss.1998)).

Therefore, this Court finds that diversity jurisdiction does not lie in this case, and that it does not have subject matter jurisdiction on that basis. The Court turns now to the Defendants' second asserted basis for subject matter jurisdiction.

### B. Preemption and Federal Removal Jurisdiction

■ In his complaint, Virgil sues for gross negligence, a state common-law action. However, the Defendants assert that

---

1. Twenty-three senses of "and" are recorded in *Webster's Third New International Dictio-* *nary,* p. 80 (1961).

because Virgil referred to collection attempts made by defendant Northland Credit Group, Inc., his state-law claim is preempted by the FDCPA. The Defendants further cite a previous opinion by this Court, *Thrasher v. Cardholder Services,* 74 F.Supp.2d 691 (S.D.Miss.1999) (Barbour, J.), which held that removal was proper where the FDCPA apparently conflicted with state common-law causes of action. They claim that therefore, "under the doctrine of conflict preemption, plaintiff's claims are preempted by the FDCPA," which then would lead to supplemental jurisdiction over Virgil's other claims pursuant to 28 U.S.C. § 1367.

■ Where a district court has original jurisdiction over a civil action brought in state court, the defendant may remove to the appropriate district court. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (citing 28 U.S.C. § 1441(a). One source of original jurisdiction is the presentation of a federal question, one "arising under the Constitution, laws, or treaties of the United States.") *Metropolitan Life,* 481 U.S. at 63, 107 S.Ct. 1542 (quoting 28 U.S.C. § 1331).

■ According to the well-pleaded complaint rule, no federal question arises where the plaintiff's well-pleaded complaint raises no issues of federal law. *Id.* (citing *Gully v. First Nat'l Bank,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908)). The plaintiff may even deliberately shun the embrace of federal jurisdiction by choosing to plead only state law. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); *Medina v. Ramsey Steel Co., Inc.,* 238 F.3d 674, 680 (5th Cir.2001).

■ However, under the "artfully-pleaded complaint" exception to the well-pleaded complaint rule, removal may be proper where the defendant can show that Congress has legislated so as to *completely* preempt any state law claims in the relevant field of law. *Metropolitan Life,* 481 U.S. at 63–64, 107 S.Ct. 1542. *See Waste Control Specialists, LLC v. Envirocare of Tex.,* 199 F.3d 781, 783 (5th Cir.2000) ("Without complete preemption, the artful pleading doctrine does not apply"). Such complete preemption must not be confused with ordinary preemption, which may be either *expressly* stated by statute or else inferred from a direct *conflict* between federal and state laws. *Johnson v. Baylor Univ.,* 214 F.3d 630, 632 (5th Cir.2000) (citing *Heimann v. National Elevator Indus. Pension Fund,* 187 F.3d 493, 499 (5th Cir.1999)). " 'Complete preemption,' which creates federal removal jurisdiction, differs from more common 'ordinary preemption' (also known as 'conflict preemption'), *which does not.*" *Johnson,* 214 F.3d at 632 (emphasis added). *See also Rivet v. Regions Bank of La.,* 522 U.S. 470, 478, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998) (recognizing as "fundamental" the rule ... that a "defendant cannot remove on the basis of a federal defense"); *Metropolitan Life,* 481 U.S. at 63, 107 S.Ct. 1542 ("As a defense, [federal pre-emption] does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court").

■ The United States District Court for the Southern District of New York recently acknowledged the importance of distinguishing between original and removal jurisdiction, calling removal jurisdiction a somewhat different animal than original federal question jurisdiction.... [R]emoval jurisdiction must be viewed with a somewhat more skeptical eye; the fact that a plaintiff in one case

chooses to bring a claim as a federal one and thus invoke federal jurisdiction *does not mean that federal removal jurisdiction will lie in an identical case* if the plaintiff chooses not to assert a federal claim.

*Eastern States Health & Welfare Fund v. Philip Morris, Inc.,* 11 F.Supp.2d 384, 390 (S.D.N.Y.1998) (*quoted in Greer,* 105 F.Supp.2d at 588 (emphasis added)). The importance of respecting our federal system of government places a burden on federal district courts to "strictly construe removal jurisdiction." *Willy v. Coastal Corp.,* 855 F.2d 1160, 1164 (5th Cir.1988) (*quoted in Greer,* 105 F.Supp.2d at 588).

■ Field preemption, in which the federal law is "so pervasive as to make reasonable the inference that Congress left no room for the states to supplement it," *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947) (*quoted in Gade v. National Solid Wastes Mgmt. Ass'n,* 505 U.S. 88, 98, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992)), might seem identical to complete preemption, but the two are analyzed differently due to the element of removal jurisdiction. Courts should not

> blur the important distinction between the jurisdictional doctrine of complete preemption and the more familiar defense of ordinary preemption. "Stated simply, complete preemption functions as a narrowly drawn means of assessing federal removal jurisdiction, while ordinary preemption operates to dismiss state claims on the merits and may be invoked in either federal or state court."

*A.S.I. Worldwide Communications Corp. v. WorldCom, Inc.,* 115 F.Supp.2d 201, 205 n. 6 (D.N.H.2000) (quoting *BLAB T.V. of*

*Mobile, Inc. v. Comcast Cable Communications, Inc.,* 182 F.3d 851, 854–55 (11th Cir.1999)). In any event, this Court has already noted that Congress's exceptions to preemption in the FDCPA suggest that field preemption is not to be inferred. *Thrasher,* 74 F.Supp.2d at 694.

■ The Fifth Circuit has laid down a three-part test for finding complete preemption: the court must be assured that

> (1) the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law; (2) there is a specific jurisdictional grant to the federal courts for enforcement of the right; and (3) there is a clear Congressional intent that claims brought under the federal law be removable.

*Heimann,* 187 F.3d at 499. The court clarified the intent requirement further in *Johnson:* "a clear statement by Congress that state-law claims will be removable" must exist. 214 F.3d at 633. *See El Paso Natural Gas Co. v. Neztsosie,* 526 U.S. 473, 484–85, 119 S.Ct. 1430, 143 L.Ed.2d 635 (1999) (noting that Congress explicitly provided for federal removal in Price–Anderson Act).

The *Heimann* test's first prong is that the federal statute must include a civil action provision "that both replaces and protects [2] the analogous area of state law." 187 F.3d at 500. The FDCPA imposes civil liability. 15 U.S.C. § 1692k.

The second factor is whether jurisdiction is specifically granted to the federal courts. *Id.* Section 1692k(d) grants jurisdiction to "any appropriate United States District Court without regard to the amount of controversy, or in any other court of com-

---

2. While "replaces and protects" is a seemingly contradictory notion, the idea seems to be that the federal law's displacement of state law is then protected by the statute from encroachment; however, this interpretation does not have the benefit of case law to support it.

petent jurisdiction." That is, the FDCPA grants concurrent jurisdiction to federal and state courts. *In re Scrimpsher*, 17 B.R. 999, 1004 n. 8 (Bankr.N.D.N.Y.1982).

 The third factor is whether Congress specifically grants removal jurisdiction to the federal courts. *Heimann*, 187 F.3d at 500. No such grant is in the FDCPA. Moreover, Congress specifically provided for state laws regarding debt-collection practices to remain valid unless inconsistent with the FDCPA:

> This subchapter does not annul, alter, or affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency. For purposes of this section, a State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection provided by this subchapter.

15 U.S.C. § 1692n. Thus, Congress intended to allow states to continue to legislate in this area, and it granted concurrent jurisdiction. "A statute's specific provision for concurrent state and federal jurisdiction and/or the application of both state and federal law weighs against complete preemption." *Bear MGC Cutlery Co., Inc. v. Estes Express Lines, Inc.*, 132 F.Supp.2d 937, 942–43 (N.D.Ala.2001) (citing *BLAB T.V.*, 182 F.3d at 857). Not even Congressional intent to impose a uniform legal standard will necessarily imply its intent to establish complete preemption and hence federal removal jurisdiction. *BLAB T.V.*, 182 F.3d at 858. *Compare id.* at 859 n. 3 (creation of federal cause of action does not itself show intent for complete preemption, else "complete preemption would apply to every statute that cre-

ates a federal cause of action and complete preemption would be ordinary rather than extraordinary") *with Caterpillar, Inc.*, 482 U.S. at 393, 107 S.Ct. 2425 (complete preemption appears when "the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim").

Further, no court has held that the FDCPA completely preempts applicable state law or even that it preempts the field. *See, e.g., Silver v. Woolf*, 538 F.Supp. 881, 887 n. 3, 888–89 (D.Conn. 1982) ("Congress has itself recognized the importance of the states' interest by explicitly providing that [the FDCPA] does not preempt the field and that the states, therefore" can regulate consistently with it). While field preemption is not complete preemption, it is arguably broader, so that a want of field preemption strongly implies the absence of complete preemption.

Given the above, it does not appear immediately obvious that Congress has "evinced a powerful intent to entirely displace state causes of action" such as would indicate complete preemption. *Greer*, 105 F.Supp.2d at 587. "Complete preemption is a narrow exception," one that the Supreme Court has expressly approved only in the context of ERISA and of federal labor law. *Johnson*, 214 F.3d at 632. This Court declines to find that the FDCPA completely preempts state causes of action in the absence of an express Congressional intention to do so. Because conflict preemption does not permit federal removal jurisdiction and no complete preemption exists such as would permit the Defendants to invoke the artful pleading exception to the well-pleaded complaint rule, this Court finds that it does not have subject matter jurisdiction in the present

case on the basis of any federal preemption issues.[3]

### III. Conclusion

For the reasons stated above, the Court finds that it does not have subject matter jurisdiction. Neither diversity nor a federal question exists to permit removal to this Court.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Remand [6–1] is hereby granted and this case is hereby remanded to the Circuit Court of Copiah County, Mississippi.

---

**3.** The plaintiff in *Thrasher* complained about harassing phone calls, which this Court found covered by the FDCPA so that conflict preemption led to removal. *Thrasher,* 74 F.Supp.2d at 695. Virgil's suit for gross negligence in pursuing a debt is distinguishable from *Thrasher.* In *Thrasher,* the Court also found that allowing emotional-distress tort claims against creditors "would stand as an obstacle" to the aims of the FDCPA, and took this conflict preemption to justify removal. In any event, to the extent that *Thrasher* may conflict with Supreme Court and Fifth Circuit precedent on federal removal jurisdiction, it is accordingly overruled.