IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 6, 2002 Session

## JENNIFER NORMAN v. STEVEN NORMAN

**Appeal from the Circuit Court for Davidson County**
**No. 99D-3119     Muriel Robinson, Judge**

---

**No. M2001-01281-COA-R3-CV - Filed February 18, 2003**

---

This appeal is the culmination of a lengthy and bitter child support battle. When the parties were divorced in 1994 by the Law Court for Washington County, the wife was awarded custody of their child, and the husband was required to pay child support. The court also approved the parties' marital dissolution agreement that, among other things, provided for annual child support adjustments and obligated the husband to provide the wife with a copy of his annual federal income tax return. The case was transferred to the Circuit Court for Davidson County after the wife and child moved to Nashville. In November 1999, the mother requested the trial court to increase child support and to hold the husband in contempt for failing to provide her copies of his tax returns. Following a bench trial, the trial court not only increased the child support prospectively but also awarded the wife $19,026 in retroactive child support back to 1996. The husband asserts on this appeal that the trial court erred by awarding retroactive child support. We have determined that the trial court did not err by awarding child support back to 1996 because the wife had filed a motion to modify child support in 1996 that had never been acted upon. Accordingly, we affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and D. MICHAEL SWINEY, J., joined.

D. Scott Parsley, Nashville, Tennessee, for the appellant, Steven Norman.

Jon S. Jablonski and Kathryn G. Brinton, Nashville, Tennessee, for the appellee, Jennifer Norman.

### OPINION

### I.

Jennifer Douglas and Steven Ennis Norman were married on February 4, 1984, in Fayetteville, Tennessee. Their son was born in September 1989. The parties moved to Johnson City after Dr. Norman entered medical school at East Tennessee State University. Their marriage foundered following the move, and the parties separated on February 4, 1994. On February 23, 1994, Ms. Norman filed a divorce complaint in the Law Court for Washington County.

The parties negotiated a comprehensive marital dissolution agreement that was approved and incorporated into the final divorce decree entered on June 3, 1994. The provisions of this agreement most relevant to this appeal are (1) that Ms. Norman received custody of the parties' son, (2) that Dr. Norman was required to pay $300 per month in child support, (3) that Dr. Norman's child support obligation would be re-evaluated each April and adjusted each May based on his earnings for the previous calendar year, and (4) that Dr. Norman was required to "disclose his U.S. Individual Income Tax Return (Form 1040) to the Wife's attorney each year . . .."[1]

Ms. Norman and the parties' son eventually moved to Nashville. Dr. Norman graduated from medical school and moved to Jackson for his residency. Thereafter, in August 1996, Dr. Norman filed a motion in the Law Court for Washington County seeking sole custody of the parties' son. Ms. Norman responded on September 18, 1996, by opposing Dr. Norman's request for a change of custody and by requesting an increase in child support as well as an order directing Dr. Norman to produce his income tax returns as required by the marital dissolution agreement. The Law Court for Washington County ordered Dr. Norman to produce his tax returns but, for reasons not evident in the record, took no further steps to resolve the other pending requests for relief.

On October 22, 1999, the Law Court for Washington County transferred the case to the Circuit Court for Davidson County. Less than one month later, Ms. Norman filed a petition to hold Dr. Norman in criminal contempt for failing to provide his 1997 and 1998 income tax returns to her lawyer. She also requested a prospective increase in her child support, as well as retroactive child support. Dr. Norman responded with his own petition to hold Ms. Norman in contempt, to change custody, and to modify portions of the marital dissolution agreement.

The trial court conducted a hearing on December 7, 2000. On January 8, 2001, it entered an order increasing Dr. Norman's monthly child support payments to $1,600 and awarding Ms. Norman a $2,900 deficiency judgment for the months of November and December 2000. The trial court took Ms. Norman's request for retroactive child support and all other issues under advisement. Following another hearing on April 5, 2001, the trial court filed an order on May 9, 2001 awarding Ms. Norman a $19,026 judgment for child support retroactive to September 18, 1996 and $7,500 for her legal expenses. Dr. Norman has appealed the portion of the trial court's May 9, 2001 order directing him to pay $19,026 in retroactive child support for the period between September 18, 1996 and October 2000.

## II.

We turn first to Dr. Norman's procedural complaint regarding the April 5, 2001 hearing. He takes issue with the trial court's consideration of the abstract or tabulation of his salary and child support obligations for 1995 through 1999 prepared by Ms. Norman's lawyer. He also asserts that

---

[1]The parties clearly anticipated that Dr. Norman's income would increase after he graduated from medical school and established a practice. For example, even though Dr. Norman reported income of only $3,453 on his 1995 income tax return, the parties' marital dissolution agreement required Dr. Norman to pay tuition and costs for Ms. Norman to earn a bachelor's degree at one of Tennessee's public universities after he completed medical school and his residency.

without this tabulation, there is no evidence regarding his income from 1995 through 1999 because he was not present at the April 5, 2001 hearing to testify about his income.[2] This argument fails for two reasons. First, Dr. Norman did not object to the use of the tabulation at the April 5, 2001 hearing. Second, the trial court did not abuse its discretion by considering an accurate tabulation of information that had already been filed with the court.

At some point prior to the April 5, 2001 hearing, copies of Dr. Norman's tax returns from 1995 through 1999 were filed with the trial court. On the day of the hearing, Ms. Norman's lawyer provided the trial court with two exhibits. The first exhibit included copies of "pertinent documents in the [court's] file," including orders, motions, and copies of Dr. Norman's tax returns from 1995 through 1999. Ms. Norman's lawyer explained that he had prepared this exhibit to enable the court to "make a quick reference to . . . [the pertinent documents] as opposed to sorting through the file." Dr. Norman's lawyer did not object to this exhibit.

The second exhibit was a tabulation prepared by Ms. Norman's lawyer containing calculations of the child support Dr. Norman would have paid from 1995 through 1999 under the child support guidelines based on the income Dr. Norman reported on his income tax returns. Dr. Norman's lawyer did not take issue with the accuracy of the information on this tabulation or the correctness of the calculations and did not otherwise object to the admission of this exhibit.

Except in the most compelling circumstances, this court customarily declines to consider arguments that were not presented to the court below and that are being raised for the first time on appeal. *Norton v. McCaskill*, 12 S.W.3d 789, 795 (Tenn. 2000); *Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991). This principle is especially applicable to disputes regarding the admissibility of evidence when there was no objection to the evidence at trial. A party's failure to make a specific and timely objection generally forecloses a later appellate challenge to the admission of the evidence. *Tire Shredders, Inc. v. ERM-North Cent., Inc.*, 15 S.W.3d 849, 864 (Tenn. Ct. App. 1999); *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 702 (Tenn. Ct. App. 1999); Neil Cohen, et al., *Tennessee Law of Evidence* § 1.03[4][h] (4th ed. 2000). Accordingly, the failure of Dr. Norman's lawyer to object to the admission of the two exhibits considered by the trial court at the April 5, 2001 hearing effectively forecloses raising this issue on appeal.

Litigants may prepare and use exhibits containing summaries of properly admitted evidence. Tenn. R. Evid. 1006 (authorizing the use of charts, summaries, or calculations based on voluminous materials that cannot be conveniently examined in court). *United States v. Brown*, 136 F.3d 1176, 1182 (7th Cir. 1998); *Long v. Mattingly*, 797 S.W.2d 889, 893 (Tenn. Ct. App. 1990) (allowing experts to base their testimony on accurate tabulations of documents already admitted into evidence). Charts and graphs summarizing information culled from the parties' records have often been admitted in recognition that such summaries are a reasonable and efficient means of presenting relevant information. *Amsted Indus., Inc. v. National Castings, Inc.*, No. 88 C 924, 1990 WL

---

[2]There is no dispute that Dr. Norman had ample notice of the April 5, 2001 hearing. The record contains no credible explanation for his absence. The trial court specifically noted that Dr. Norman "was duly noticed and failed to appear, which is nothing new because he never comes in anyway."

106548, at *22 (N.D. Ill. July 11, 1990). Lawyers who prepare and use these summaries should be commended rather than criticized.

The disputed exhibits in this case consisted of accurate photocopies of papers and other materials that had already been filed with the trial court. The calculations of Dr. Norman's child support obligations from 1995 to 2000 were based on information taken from Dr. Norman's own tax returns and the straightforward formula for child support contained in the child support guidelines. Dr. Norman did not contest the authenticity of the tax returns or the correctness of the calculations based on these tax returns. Accordingly, we decline to hold that the trial court abused its discretion by considering and relying on these exhibits.

**III.**

Dr. Norman has two substantive challenges to the $19,026 retroactive child support award. First, he complains that Ms. Norman is not entitled to these funds because she waited so long to obtain a judicial resolution of this matter. Second, he insists that Tenn. Code Ann. § 36-5-101 (Supp. 2002) does not permit retroactive child support. Neither of these claims has merit.

The first complaint about the amount of time it has taken Ms. Norman to bring the issue of his child support before the courts overlooks four salient considerations. First, this dispute arose solely because Dr. Norman unilaterally decided in 1996 to disregard the obligations he voluntarily undertook in the 1994 marital dissolution agreement. Second, Dr. Norman's failure to honor the terms of the marital dissolution agreement was not brought about by his inability to pay increased child support. Third, Dr. Norman has not pursued his legal claims diligently, and he has tried to frustrate Ms. Norman's efforts. Fourth, the child support that Dr. Norman seeks to avoid is intended to benefit his son, not Ms. Norman. Dr. Norman would not be facing this $19,026 judgment had he honored the terms of the marital dissolution agreement. Accordingly, we decline to give much weight to Dr. Norman's complaints about delay.

The second argument based on Tenn. Code Ann. § 36-5-101 is somewhat more colorable than Dr. Norman's first argument. However, it too must fail because it reads too much into the statutory prohibition against retroactive modifications of child support. The prohibition in Tenn. Code Ann. § 36-5-101(a)(5) applies only to modifications of child support for periods preceding the filing of a petition or motion to modify a child support award.

Tenn. Code Ann. § 36-5-101(a)(5) states, in part, that judgments for child support

> shall not be subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed and notice of the action has been mailed to the last known address of the opposing parties.

The Tennessee Supreme Court has interpreted this provision to prevent modifications of child support awards only for periods preceding the filing of an appropriate petition or motion to modify child support. Any modification of child support for a period occurring after the filing of a motion

or petition complying with Tenn. Code Ann. § 36-5-101(a)(5) is a permissible "prospective modification." *Rutledge v. Barrett*, 802 S.W.2d 604, 606 (Tenn. 1991).

This court has consistently adhered to the Tennessee Supreme Court's interpretation of Tenn. Code Ann. § 36-5-101(a)(5). *Tinsley v. Tinsley*, No. M2001-02319-COA-R3-CV, 2002 WL 31443210, at *6 (Tenn. Ct. App. Nov. 1, 2002) (No Tenn. R. App. P. 11 application filed); *Siefker v. Siefker*, No. M2001-01458-COA-R3-CV, 2002 WL 31443213, at *4 (Tenn. Ct. App. Nov. 1, 2002) (No Tenn. R. App. P. 11 application filed). Thus, the pivotal inquiry in cases of this sort is determining when the petition or motion for modification of child support was filed. If the challenged modification is for a period occurring before the motion or petition was filed, we must vacate it pursuant to Tenn. Code Ann. § 36-5-101(a)(5). If, however, the challenged modification is for a period occurring after the motion or petition was filed, Tenn. Code Ann. § 36-5-101(a)(5) does not provide a basis for setting the modification aside.

Determining whether the trial court properly construed the legal significance of Ms. Norman's September 18, 1996 "cross petition" requires us to answer the following three questions. First, was the "cross petition" an "action for modification" as envisioned by Tenn. Code Ann. § 36-5-101(a)(5)? Second, was notice of the "cross petition" mailed to Dr. Norman at his last known address as required by Tenn. Code Ann. § 36-5-101(a)(5)? Third, has the "cross petition" remained viable and not acted upon since it was filed?

The form of Ms. Norman's "cross petition" is somewhat unorthodox. However, it includes the following three averments:

> J. The Husband is now involved in his medical residency in Jackson, Tennessee, and his income has increased considerably.
>
> K. The Court should order the Husband to deliver to the Wife his individual income tax returns for all years since the date of the Decree of Divorce in this cause, since he has never done so.
>
> L. The Husband lives a life indicating that he has income equivalent to $60,000.00 to $90,000.00 per year. The Wife is unaware of this income, but if the income is in that amount, the child support should be increased.

While the "cross petition" does not contain a specific prayer for modification of child support, it concludes with a prayer for "such other, further and different relief as she may be in equity and in good conscience entitled."

Tenn. Code Ann. § 36-5-101(a)(5) does not require that a request to modify child support be titled an "action for modification." Papers filed in court are considered in light of their substance rather than their form. *Bemis Co. v. Hines*, 585 S.W.2d 574, 576 (Tenn. 1979); *Starks v. Browning*, 20 S.W.3d 645, 652 (Tenn. Ct. App. 1999). Accordingly, we consistently examine the nature of the relief sought to determine how to classify or categorize a paper filed in court. *Fallin v. Knox County*

*Bd. of Comm'rs*, 656 S.W.2d 338, 342 (Tenn. 1983); *Estate of Doyle v. Hunt*, 60 S.W.3d 838, 842 (Tenn. Ct. App. 2001). Ms. Norman's "cross petition" requests that Dr. Norman's child support obligation be increased if his income had increased as she believed it had. Accordingly, we find that the trial court properly construed Ms. Norman's "cross petition" as a request for modification of child support for the purpose of Tenn. Code Ann. § 36-5-101(a)(5).[3]

Determining whether the notice of the petition was mailed to the opposing party's last known address as required by Tenn. Code Ann. § 36-5-101(a)(5) should be relatively straightforward. A proper certificate of service consistent with Tenn. R. Civ. P. 5.03 provides prima facie evidence that the document was served in the manner described in the certificate and raises a rebuttable presumption that the document was received by the person to whom it was sent. *Orr v. Orr*, No. 01A01-9012-CH-00464, 1991 WL 226916, at *4 (Tenn. Ct. App. Nov. 6, 1991) (No Tenn. R. App. P. 11 application filed). Regrettably, none of the papers filed by either party in the Law Court for Washington County in August and September 1996 contain a certificate of service.[4]

The absence of a certificate of service can place the party seeking to establish receipt of a document in a quandary if the opposing party denies that it received the document. Ms. Norman avoids this quandary here because Dr. Norman has never denied that he received a copy of Ms. Norman's "cross petition" in September 1996. Because Dr. Norman has never asserted that he did not receive Ms. Norman's "cross petition," we conclude that he did and, therefore, that Ms. Norman complied with the notice requirement in Tenn. Code Ann. § 36-5-101(a)(5). *Nash v. Waynick*, No. M2000-02096-COA-R3-CV, 2001 WL 360703, at *4 (Tenn. Ct. App. Apr. 12, 2001) (No Tenn. R. App. P. 11 application filed) (holding that an answer that did not contain a certificate of service had been sent because the opposing party did not claim that it had not been received).

The final question involves the continuing viability of Ms. Norman's motion or petition seeking a child support modification. Obviously, a request for modification that has either been withdrawn or acted upon cannot provide the starting point for determining the earliest date for a modification of child support. The trial court determined that Ms. Norman's September 18, 1996 "cross petition" had never been acted upon, and the certified record of the proceedings in the Law Court for Washington County bears out this conclusion.

We concur with the trial court's findings (1) that Ms. Norman filed a request for modification of Dr. Norman's child support obligation on September 18, 1996 that had not been acted upon by the time of the April 5, 2001 hearing and (2) that Tenn. Code Ann. § 36-5-101(a)(5) authorized modifications of Dr. Norman's child support obligation back to September 18, 1996. We also find

---

[3]Dr. Norman's lawyer essentially conceded during the April 5, 2001 hearing that Ms. Norman's "cross petition" was a Tenn. Code Ann. § 36-5-101(a)(5) action for modification. He stated: "But she filed a petition, filed a cross petition in Johnson City, Your Honor, back in September of 1996. When she did that, specifically, she stated in her complaint that child support should be increased. That's 1996."

[4]It is possible, although unlikely, that these documents could have been served in accordance with Tenn. R. Civ. P. 4 rather than Tenn. R. Civ. P. 5. Had the parties served their papers using Tenn. R. Civ. P. 4, the summonses would not have been included in the record unless the parties had specifically designated them to be included. Tenn. R. App. P. 24(a).

that the trial court properly applied the child support guidelines to Dr. Norman's income as reflected in his tax returns. Accordingly, we affirm the $19,026 judgment representing the child support that Dr. Norman should have paid between September 1996 and October 2000.

**IV.**

We affirm the judgment and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal to Steven Ennis Norman and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE